Bruffett et al. v. Great Western Railroad Co.

GRIFFIN M. BRUFFETT *et al.*, Plaintiffs in Error, *v.* THE GREAT WESTERN RAILROAD COMPANY OF 1859, Defendant in Error.

ERROR TO PIATT.

25  353
122  297
25  353
207  c323
207  b358
j207  c367
j207  c370

An act which repeals a railroad corporation and confers its powers upon a different body, with a view to declare a forfeiture or create a dissolution, is unconstitutional.

If one corporation in any authorized mode, becomes the proprietor of the property and franchises of another, the former is released from the indebtedness of the latter, not ripened into a prior lien.

Debts incurred by an incorporation, cannot be released or transferred by legislative enactment.

The sale of the property of a corporation, does not disorganize it.

The charter of an incorporation, can only be judicially forfeited, for non-user.

The charter of a private corporation, is a contract, with which the legislature cannot interfere without consent.

Unless the obligation is expressly created, one corporation is not liable for the indebtedness of another.

THIS was an action of assumpsit, brought by the plaintiffs in error against the defendants, in the Piatt Circuit Court, to recover damages for a breach of contract, in failing to carry two thousand hogs from Bement station to Chicago.

There was a plea of the general issue, and a trial by the court, EMERSON, Judge, presiding, who found for the defendant, and rendered judgment accordingly.

The plaintiffs below brought this writ of error.

· It was admitted upon the trial that the plaintiffs, in December, 1855, made a contract with the Great Western Railroad Company, said company being a common carrier, by which contract the said Great Western Railroad Company undertook and agreed with plaintiffs to ship and convey for said plaintiffs, on the 22nd day of December, 1855, from the said Great Western Railroad Company's station at Bement, in Piatt county, Illinois, to the city of Chicago, in said State, for a reasonable hire and reward, to be paid them therefor by the said plaintiffs, two thousand hogs of the said plaintiffs. That in pursuance of said contract, said plaintiffs, on their part, delivered to the said Great Western Railroad Company for shipment, at their said station at Bement, said two thousand hogs, on the said 22nd day of December, 1855. That said Great Western Railroad Company failed and neglected to ship said two thousand hogs, in conformity with their said contract, and that by reason of such neglect and failure, plaintiffs sustained damages to the amount of two thousand dollars.

23

The plaintiffs then read in evidence several acts of the legislature of Illinois, as follows, to wit:

"An act to incorporate the Great Western Railroad Company of 1859." Approved January 22nd, 1859.

"An act to change the name and further amend the charter of the Sangamon and Morgan Railroad Company." Approved February 12th, 1853. And

"An act to incorporate the Sangamon and Morgan Railroad Company." Approved March 1st, 1845.

In this suit, the cause of action was admitted as against the Great Western Railroad Company, and the only question that remained to be settled, was, whether the defendant is the same corporate person, and therefore liable in this action.

In 1845, the legislature of Illinois incorporated the Sangamon and Morgan Railroad Company. In 1853, the name of said company was changed, by an act of the legislature, to the "Great Western Railroad Company," and the charter thereof amended. And in 1859, an act was passed by the legislature, entitled "An act to incorporate the Great Western Railroad Company of 1859," and conferring thereon "all the privileges, powers, rights and franchises, at any time before possessed by the Great Western Railroad Company."

The plaintiffs insist, that the act of the legislature of January 22nd, 1859, entitled "An act to incorporate the Great Western Railroad Company of 1859," is simply an act of reincorporation of the Great Western Railroad Company, and operates only as a merger of the old corporation into the new one, under a change of name.

The errors assigned are : That the court erred in rendering judgment against plaintiffs for costs. That the court erred in not giving judgment for plaintiffs for amount of damages proven.

Tupper & Nelson, for Plaintiffs in Error.

S. T. Logan, and A. J. Gallagher, for Defendant in Error.

Walker, J. It seems to have been the design of the legislature, to repeal the charter of the Great Western Railroad Company by the act of the 22nd of January, 1859, and to confer its property, rights and franchises upon a different body of incorporators, then created. It is urged, that such an exercise of power by the legislature, is in contravention of the 17th section of the 13th article of our State constitution. That section provides that "No *ex post facto* law, nor any law impairing the

obligation of contracts, shall ever be made," etc. In the case of *Dartmouth College* v. *Woodward*, 4 Wheat. 518, it was held by the Supreme Court of the United States, that the charter of a private corporation, whether civil or eleemosynary, is an executed contract, between the government and the corporators, and that the legislature have no power to repeal, impair or alter it, against their consent. This rule has been uniformly adhered to by that court, in a number of other cases, and is recognized by the supreme judicial tribunals of the various States of the Union as undoubted law, and it may be regarded as the settled law of this country. This doctrine is fully recognized by this court, as the correct rule. *Coles* v. *Madison County*, Breese R. 120; *Bush* v. *Shipman*, 4 Scam. 190.

As it regards municipal corporations, created for public purposes alone, a different rule prevails. With such bodies, it is the uniform and well settled doctrine, that they are under proper limitations, within the legislative control, and their charters may be altered, amended or repealed at pleasure.

If however, this act might be regarded as an effort to declare a forfeiture of the chartered rights of the company, then in existence, it is urged that it would violate the second article of our State constitution. The second section of that article, divides the powers of government, and confers them upon three distinct bodies of magistracy; the legislative, the executive and the judiciary. The second section, expressly prohibits any person or collection of persons, being one of these departments, from exercising any power properly belonging to either of the others, and it declares all acts in violation of that section void. Was this then the exercise of a legislative or a judicial power? Whilst in Great Britain, Parliament is held to be omnipotent, and in theory may exercise such power, yet inasmuch as legislative bodies in this country act under limitations and restrictions imposed by constitutional provisions, precedents drawn from acts of Parliament, can have no application in this country.

We are informed by Mr. Justice Blackstone, in his Commentaries, that amongst the different modes by which a corporation may be dissolved, is that of a forfeiture of its charter, by negligence or abuse of its franchises. In such a case the law judges that it has broken the condition upon which it was incorporated, and thereupon it has become void. He also informs us that the regular course in such a case, to deprive the body of its powers, is to bring an information in the nature of a *quo warranto*, to inquire by what warrant its members exercise their corporate powers, having forfeited the charter, by the acts complained of in the information. Another mode of judicial proceeding, is by *scire facias*, which under some circumstances is the appropriate

remedy to have the forfeiture ascertained and declared. These are the remedies in Great Britain, notwithstanding the Parliament in theory possesses the same power to declare a forfeiture as the courts. Chancellor Kent, in his Commentaries, volume 2, page 305, lays down the doctrine, that the legislature cannot repeal, impair or alter the rights and privileges conferred by the charter, against the consent, and without the default of the corporation judicially ascertained and declared. It has been said that it is a feature in the constitution of our government, that the legislature of the different States resembles, in this particular, the prerogative of the King of Great Britain, who may create, but cannot dissolve a corporation, or without its consent alter or amend its charter.

It is not doubted that the legislature is prohibited, by the constitution, from exercising the power of judicially determining and declaring that a contract is forfeited, between individuals. And no reason can be perceived, why it should be exercised, when the state itself is a party to the agreement. The power in either case, is by the constitution devolved upon the courts, and is consequently prohibited to the legislative department. It then follows that this act, so far as it may have been designed to declare a forfeiture of the charter of the Great Western Railroad Company, and to dissolve that body, is prohibited by the constitution, and is inoperative and void.

Such a body may undoubtedly surrender to government their charter and franchises. In that event, it would be entirely competent for the legislature to resume the rights and franchises, and to retain or grant them, to whom they might choose. There is nothing appearing in this record from which it can be inferred that any such surrender was ever made or attempted. Nor does it appear that its charter was judicially declared forfeited, or that its existence had been in any other mode terminated. There is no evidence that the incorporators, named in the act of 1859, had become the owners of the property and franchises of the Great Western Railroad Company, by purchase, or in any other mode authorized by law, prior to the passage of this act. Had such a sale been made, the property thus transferred would have thereby become released from the payment of the debts, not a prior lien; nor would the future earnings of the road, made by such a purchaser, be liable to the payment of such debts. In case this company had become insolvent, and legally transferred its charter, rights, franchises, privileges and property, and the purchasers become again incorporated, the new company would not be liable for the unpaid debts of the old organization. But after a transfer of all the property, the charter and franchises would still remain in the

incorporation, and could not be sold unless authorized by legislative enactment.

Debts incurred by an incorporation cannot be released or transferred by legislative enactment. The legislature has no competent power to release or discharge any such body from their legal liabilities to individuals, whether incurred by contract, forfeiture or penalty. When individuals enter into contracts with such bodies, they have the undoubted right to resort to the appropriate remedies, to compel a performance or to recover damages for a breach of the agreement. For the purpose of acquiring satisfaction of any judgment they may recover, they may resort to their property as to that of individuals. If the legislature might release such bodies from liability to perform their engagements, or from paying their debts, or damages incurred by a breach of contract or of duty, they would thereby impair the obligation of contracts existing between individuals and the company. The exercise of such power is prohibited. As long as the company exists, it must remain bound for its debts and liabilities until legally discharged. If the legislature might release the company from the liability to creditors and stockholders, at the request of a large creditor, by enacting a transfer of the charter franchises and property, they might do the same thing at the request of a small creditor, or of any other person. If the power is admitted in the one case, it must be in the other.

The sale of the rolling stock and personal property of the road did not produce a disorganization of the corporation. The purchaser did not, by that means acquire the right to employ it upon the road or to use the franchises of the company. By a loss of its property, the company may have been unable to use and enjoy its franchises, but when they might afterwards acquire the requisite property for the purpose, they might then render the charter available, and such property would become liable to the payment of its debts. The charter and franchises are not an incident that is annexed to and passes with a transfer of the property of such a company. Nor does the company forfeit or become deprived of such rights by the loss of its property. The company may exist after its property is gone. If there is a cause of forfeiture for non user, that must be determined judicially to make it effectual.

What then was the effect of this enactment of the 22nd of January, 1859. It created a new company, with rights, privileges and franchises similar to those enjoyed by the Great Western Railroad Company, but it by no means repealed the charter of that company. Nor did it transfer the property or rights of that company to the new organization, or release the

old company from any of its liabilities. It leaves that company in existence, with all of its rights, privileges, franchises and property, and liable for all its debts and contracts, as though the new incorporation had never been brought into existence. If the new company have become organized, and had intruded into the occupancy of the road of the old company, it is liable to be sued for its recovery, unless they derive the right to thus use it by some other means than this enactment. The old company being still in existence, so far as this record discloses, it should have been sued, and not the new company. The action was misconceived, and cannot be maintained against these defendants. The judgment of the court below must be affirmed.

*Judgment affirmed.*