## FIRST STATE BANK OF OKLAHOMA CITY v. LEE.

No. 7308—Opinion Filed May 15, 1917.

Rehearing Denied July 10, 1917.

(166 Pac. 186.)

1. **Banks and Banking — State Banks—Status in Hands of Bank Commissioner.**
The placing of a state bank in the hands of the bank commissioner for the purpose of disposing of its assets to protect the depositors' guaranty fund, and the selling of such assets and applying the proceeds to such purpose, does not release the bank from other liabilities.

2. **Banks and Banking — State Banks——Organization.**
A state banking corporation can be created only by pursuing the statutory requirements and obtaining a charter from the Secretary of State.

3. **Same—Dissolution of State Bank.**
A state banking corporation can only be dissolved by judicial determination brought about either voluntarily or by the state in the manner prescribed by statute.

4. **Same — State Bank Commissioner and Board—Authority of.**
Neither the state bank commissioner nor the state banking board has authority to create, destroy, or transmute the corporate entity of a banking corporation.

5. **Same—Status as Corporation.**
The right to be a corporation and the franchise to do a banking business are separate and distinct. The franchise to do a state banking business is controlled by the bank commissioner, subject to statutory regulations, and, for reasons defined by statute, may be withdrawn, but such withdrawal does not work a forfeiture of the right to be a corporation.

6. **Corporations—Creation—Franchise.**
The right to be a corporation is not the subject of barter or sale.

7. **Banks and Banking—State Banks—Reorganization.**
Section 306, Rev. Laws 1910, prescribes the only method by which an insolvent state bank may be reorganized and reopened for business, and the statutory requirements should be observed.

8. **Same—Effect Upon Former Obligations.**
The action of the bank commissioner in taking over an insolvent state bank, selling its assets for the benefit of the depositors' guaranty fund, authorizing the purchasers of such assets to secure the cancellation of the stock of the insolvent bank and have new certificates of stock issued to themselves, and in granting authority to the bank so reorganized to reopen under the same name and charter and to do a banking business on the repairing of the capital stock does not, in fact or in legal effect, work a dissolution of the corporation or create a new one. And does not operate to relieve the bank from its former debts or contractual obligations.

(Syllabus by Stewart, C.)

Error from District Court, Oklahoma County; Geo. W. Clark, Judge.

Action by Oscar G. Lee against the First State Bank of Oklahoma City, Okla. Judgment for plaintiff, and defendant brings error. Affirmed.

Amos, Chambers, Lowe & Richardson, J. S. Ross, and L. D. Threlkeld, for plaintiff in error.

Everest & Campbell, for defendant in error.

Opinion by STEWART, C. The parties will be referred to hereinafter as plaintiff and defendant, as they were in the lower court.

The plaintiff filed his petition against the defendant in the court below, setting up claim for damages against the defendant because of breach of a rental contract by and between the plaintiff and defendant, it being alleged that the defendant leased from the plaintiff a certain portion of the ground floor of a building known as the "Lee Building" situated in Oklahoma City, the defendant agreeing to pay the plaintiff the sum of $850 per month for the use of such property; that after the defendant had used said property for a portion of the time for which same was leased, it abandoned said property and refused further to pay the rent, to plaintiff's damage. The issue having been joined the cause was submitted to the court without a jury on an agreed statement of facts. On the 30th day of January, 1915, the court rendered judgment for the plaintiff and against the defendant in the sum of $4,899 and costs of the court. The defendant filed motion for new trial, which was overruled; exceptions were saved, and the defendant duly appeals to this court. The agreed statement of facts read as follows:

"Comes now the above-named parties, plaintiff and defendant, Oscar G. Lee, appearing by Everest, Smith & Campbell, his attorneys, and the First State Bank of Oklahoma City, Okla., appearing by J. S. Ross and Ames, Chambers, Lowe & Richardson. its attorneys, and hereby stipulate and agree to waive the intervention of a jury in the trial of said cause, and try said cause to the court, and further stipulate and agree that said cause be tried by the court upon the following agreed statement of facts, and that the facts contained in said agreement are the material facts, and all the material facts necessary to a correct determination of said lawsuit:

"First. It is stipulated and agreed that the First State Bank of Oklahoma City, Okla., is a banking corporation, organized and existing under and by virtue of the laws of the state of Oklahoma, with its office and principal place of business in Oklahoma City, Okla. That on the 1st day of March. A. D. 1911. the said defendant. the First State Bank of Oklahoma City, Okla.. entered into the written contract of lease with the plaintiff. a copy of which is set out and attached to plaintiff's petition. and marked 'Exhibit A' thereof. and said lease is hereby made a part of this agreed statement by said reference.

"Second. It is stipulated and agreed that said defendant, the First State Bank of Oklahoma City, Okla., took possession of the real estate and premises described in said lease on the 1st day of March, 1911, and occupied the corner room in said premises, and subleased various portions of the premises described in said lease, as follows: The east room to the McVey Optical Company, for sum of $225; the middle room to Sickel & Co., for the sum of $100; the rear end of the main banking room to the Oklahoma Farm Mortgage Company, for $34.50, respectively, per month. That the said the First State Bank became insolvent on or about the 10th day of March, 1913, and the bank commissioner of the state of Oklahoma took possession of said bank and its assets, and the said bank commissioner of the state of Oklahoma and the state banking board of the state of Oklahoma filed a petition in the district court of Oklahoma county, state of Oklahoma, in words and figures, as follows:

"'In the District Court of Oklahoma County, State of Oklahoma. In the Matter of the First State Bank of Oklahoma City, Okla. Comes now J. D. Lankford, bank commissioner of the state of Oklahoma, and the state banking board of the state of Oklahoma, and respectfully represent to the court:

"'First. That the First State Bank of Oklahoma City, Okla., is a corporation organized under the laws of the state of Oklahoma for the purpose of carrying on a banking business, and in all things liable and amenable to the provisions of the law in that behalf.

"'Second. That the said First State Bank is insolvent, and that the said state banking board and the bank commissioner have under the provisions of the law taken charge and possession of said bank. That the said state banking board and J. D. Lankford, bank commissioner, for convenience hereinafter designated as parties of the first part, have entered into a tentative agreement with R. C. Menefee and his associates, who are hereinafter designated as parties of the second part, which tentative agreement is as follows:

"'Whereas, the said First State Bank has on hand cash and sight exchange in the sum of about $———, and has notes, accounts, and claims, secured and unsecured, in the sum of about $———, and has furniture and fixtures. and leasehold of the reasonable value of about $2,500.00; and whereas, under the provisions of the law, until some other suitable arrangement is made it is necessary for the banking board to take charge of the said bank, and provide for the payment of its depositors; and whereas, said R. C. Menefee and his associates, parties of the second part, have offered to purchase the cash and sight exchange, furniture, fixtures and leasehold, good will, and to pay therefor the sum

of $—— for the cash and sight exchange, which is the par value thereof and $7,500.00 in cash; and whereas, the bank commissioner and state banking board deem it expedient to carry out this transaction as aforesaid with said R. C. Menefee and his associates, and to convey and deliver to R. C. Menefee for the consideration above stated the cash and sight exchange, furniture, fixtures, leasehold and good will:

" 'Now, therefore, it is agreed as follows: The parties of the first part have taken charge of the assets of said First State Bank, shall retain all the notes, accounts and claims of said bank including a note for $10,160.00 of D'Yarmett, new in the possession of the Metal's & Mechanic's National Bank of New York City, and whose account has been credited therewith, amounting to $—— and shall issue in lieu of the assets so retained to said R. C. Menefee and his associates proper and legal warrants of the state banking board equal to the sum of the difference between the cash and sight exchange heretofore mentioned and the total amount of the liabilities of said bank, including individual deposits, certificates of deposit, saving accounts and cashier's checks, the accurate amount of which to be hereafter ascertained, said banking board and bank commissioner also to convey and deliver to said R. C. Menefee and his associates cash and sight exchange on hand, and to transfer and deliver the furniture, fixtures, leasehold and good will. It being understood that the said R. C. Menefee and his associates will at once on the approval of this agreement by the court cause to be paid into said bank the sum equal to the full capitalization of said bank. to wit, $61,000.00 and said bank. in consideration of the premises, will assume the payment on demand. according to their present status, of all of the liabilities hereinabove described and contemplated, it being understood that the furniture, fixtures and leasehold, the value of which is estimated at $2,500.00. shall be considered a part of the said capitalization.

" 'Your petitioners, the said banking board and J. D. Lankford, bank commissioner, represent to the court that the agreement herein contemplated is of great advantage to the state of Oklahoma, and to the petitioners, and will relieve the said state banking board and the bank commissioner from further great expense, labor and sacrifice.

" 'Wherefore, the petitioners pray an order from this honorable court authorizing them to enter into said agreement with said R. C. Menefee and his associates, as hereinabove set forth, and to authorize them to do all acts and things necessary for the carrying into effect of the agreement and arrangement herein contemplated, and for such other and further relief as to the court may be deemed just and proper in the premises.

"The First State Bank of Oklahoma City, Okla., mentioned and referred to in the petition, of which the foregoing is a copy, is the same institution that signed the lease referred to, and a copy of which lease was filed with plaintiff's petition in this case and marked 'Exhibit A.' That the statements contained in the petition, copy of which is above given, were true, and that at the time of the filing of said petition, the said state banking board and the said J. D. Lankford, bank commissioner, were in possession and control of the assets of every description of the First State Bank. That after the filing of said petition. copy of which is given above, the district court of Oklahoma county, Okla., on the 10th day of March, 1913. and after having acquired jurisdiction of the subject-matter of said suit, rendered a decree in said matter, in words and figures as follows, to wit:

" 'In the District Court of Oklahoma County, State of Oklahoma. In the Matter of the First State Bank of Oklahoma City. Decree.

" 'Now, on this 10th day of March, 1913, the above matter came on to be heard upon the application of the state banking board of the state of Oklahoma, and J. D. Lankford, bank commissioner of the state of Oklahoma, for authority to enter into a certain contract and agreement with R. C. Menefee and his associates, pertaining to the adjustment of the affairs of the First State Bank, and presenting in their application a tentative agreement made as first parties, and R. C. Menefee and associates as second parties, and praying for the approval of same by the court, and the court, having read said application, and being advised in the premises, finds that said tentative agreement is fairly made, and that it would be for the best interests of the public, for the state of Oklahoma, for the state banking board of the state of Oklahoma, and the bank commissioner that said agreement be entered into and carried out.

" 'The court finds that said First State Bank has on hand cash and sight exchange in the sum of about $88,608, and has notes, accounts and claims, secured and unsecured, in the sum of about $295,091.56, and has furniture, fixtures and leasehold on the premises now occupied by it of the value of about $2,500, and that the good will of the business and the name and charter of the bank are worth about $5,000; that under the law until some other suitable agreement is made it is necessary for its banking business to be liquidated, and to provide for the payment of its depositors, and the court further finds that the said First State Bank is insolvent, and the state banking board and bank commissioner have taken possession of said bank and its assets and affairs.

" 'The court further finds that said R. C. Menefee and associates have offered to take over the cash and sight exchange, furniture and fixtures, and leasehold and good will, and to pay therefor the sum of $——, which is the par value of the cash and sight exchange, and $7,500 in cash for the furniture, fixtures, leasehold, and good will.

" 'The court further finds that said banking board will take over the notes, claims, and accounts of said bank, secured and unsecured, and deliver to said R. C. Menefee and his associates legal warrants of said state banking board in a sum equal to the difference between the cash and sight exchange heretofore mentioned and the total amount of the liabilities of said bank, consisting of individual deposits, certificates of deposit, saving accounts and cashier's checks.

" 'It is therefore by the court ordered that said tentative agreement so entered into between the state banking board and state bank commissioner of the state of Oklahoma, as parties of the first part, and R. C. Menefee and his associates, as parties of the second part, be and the same is hereby ratified, confirmed, and approved, and that the said state banking board and the bank commissioner be and they are hereby authorized and directed to execute an agreement with said R. C. Menefee and his associates wherein and whereby said banking board will turn over, transfer, and deliver to the said R. C. Menefee and associates cash and sight exchange on hand in said bank, amounting to $——, and also the furniture, fixtures, leasehold, and good will, for and in consideration of $7,500, and that said banking board will take possession and charge of the notes, claims, and accounts of said bank, and will execute and deliver to said R. C. Menefee and associates legal warrants of the said state banking board subject to be paid out of the state guaranty fund of the state of Oklahoma in a sum equal to the difference between the cash and sight exchange heretofore mentioned and the total amount of the liabilities of said bank, as above enumerated, and the said state banking board and state bank commissioner is hereby authorized, empowered, and directed to carry into effect, in spirit and intent, the arrangement and tentative agreement entered into between them and said R. C. Menefee and his associates, as set forth in said application on file herein.

"That in conformity with said decree, the banking board of the state of Oklahoma executed and delivered to the said R. C. Menefee and his associates an instrument of writing, whereby they transferred, set over and delivered to the said R. C. Menefee and his associates, the furniture, fixtures, leasehold, and other things of value which had previously belonged to the said the First State Bank of Oklahoma City, Okla., said leasehold being the lease referred to in plaintiff's petition and filed with as a part thereof, and for identification marked 'Exhibit A,' and said transfer from the said banking board to the said R. C. Menefee and his associates was made by a certain instrument of writing, of which the following is true and perfect copy:

" 'R. C. Menefee and his associates: In consideration of value received, the receipt of which is hereby acknowledged and confessed, the banking board of the state of Oklahoma hereby transfers, assigns, sets over and delivers unto R. C. Menefee and his associates the furniture, fixtures, leasehold, charter and good will of the First State Bank of Oklahoma, and also the cash and sight exchange of said bank, amounting to $88,608, to have and to hold said property unto the said Menefee and his associates, his or their heirs and assigns free and clear of all charges and incumbrances. We hereby certify that an assessment of 100 per cent. has this day been levied against the stockholders of the First State Bank, and which assessment has by each of said stockholders been paid in full, and the said R. C. Menefee and his associates are hereby authorized to acquire from said stockholders the shares of stock of said bank and with the understanding that said R. C. Menefee and his associates will pay into the bank the par value of the capital stock thereof and said R. C. Menefee and his associates shall be authorized to cancel said certificates and to issue new certificates of stock to himself and associates for the amount of capital stock so paid in and which said new shares are free from claims and demands of the said banking board of the state of Oklahoma, by virtue of the assessment and levy hereinbefore referred to.

" '(Signed) State Banking Board,

" 'By F. G. Dennis.'

"That the lease referred to in plaintiff's petition was a part of the assets of the said the First State Bank of Oklahoma City, Okla., at the time that the bank commissioner and the banking board took charge of the affairs of said bank, and that the said lease is the lease mentioned in the petition in the district court above recited, and mentioned in the decree of the court, above recited, and mentioned in the assignment to Menefee and his associates, copy of which is set out above. That at the time of the execution and delivery of said assignment and transfer of all the assets of the said First State Bank of Oklahoma City, Okla., the certificates evidencing the outstanding capital stock of the said First State Bank of Oklahoma City, Okla., were canceled by the said R. C. Menefee and associates, and new certificates of stock were issued by said R. C. Menefee and associates to himself and associates.

"Third. That upon the execution of the said assignment and transfer of the assets of the First State Bank by the state banking board to R. C. Menefee and associates and the acceptance of said assignment and transfer, and, to wit, on or about the 10th day of March, 1913, the said First State Bank was in possession of all of the real property leased by the plaintiff, Oscar G. Lee, to the said First State Bank, as described in said lease, and the possession was continued in the state bank commissioner and the banking board of the state of Oklahoma, and was

continued by the said R. C. Menefee and associates, the said R. C. Menefee and his associates being the owners and holders of all the capital stock of the said First State Bank, as reorganized, and under the name of the First State Bank, a corporation as aforesaid, continued to occupy the whole of said premises so leased, and occupied the same portion as a banking room as had theretofore been occupied by the said First State Bank before its reorganization, and collected rents in the same amount and from the same persons from whom the First State Bank before itse reorganization had collected such rents, and that the said First State Bank paid all of the rents due and payable under and by virtue of the terms of said lease up to, but not including, the 1st day of January, 1914. That on the 29th day of November, A. D. 1913, the First State Bank by S. P. Berry, president, mailed to the plaintiff, Oscar G. Lee, by registered mail, a notice, the original of which together with the envelope in which the same was continued, is hereto attached, marked 'Exhibit A,' and made a part of this agreed statement of facts, and it is admitted that notice was received by the said Oscar G. Lee, plaintiff herein, on the said 29th day of November, 1913.

"It is admitted that the said Oscar G. Lee refused to accept back the possession of the said premises described in the said lease, and that the said First State Bank vacated the portion of said premises occupied by it as a bank on the 31st day of December, 1913, and thereafter refused to pay the rent on any of said premises, on the 17th day of January, 1914. It is admitted that the said Oscar G. Lee duly served upon S. P. Berry, the president of the said First State Bank, a notice in writing, specifically refusing to accept the abandonment of the premises by the said First State Bank, a copy of which said notice is hereto attached, marked 'Exhibit B', and made a part hereof. It is admitted that since the abandonment of said premises by the said defendant, First State Bank, the plaintiff, Oscar G. Lee, took possession of said premises and rented the same to the best possible advantage, and that he has collected from the rent of said premises, up to, but not including, the 1st day of October, 1914, the total sum of $3,601, and that the statement of the rents so collected hereto attached, marked 'Exhibit C', is a full, true, and correct statement of the rents so collected.

"It is admitted that at all times from and after the reorganization of said bank, the president of said bank, S. P. Berry, has claimed that the said First State Bank, as reorganized, was not bound by the terms and conditions of said lease, Exhibit A, attached to plaintiff's petition, and that the said Oscar G. Lee has at all times maintained that all of the terms of said lease were binding upon the First State Bank as reorganized.

"In witness whereof, the parties hereto have hereunto set their hands, by their respective attorneys, this 1st day of October, A. D. 1914, Everest, Smith & Campbell, Attorneys for Plaintiff. Ames, Chambers, Lowe & Richardson, J. S. Ross, Attorneys for Defendant."

The following additional stipulation was made and entered into between the parties during the trial of the cause:

"It is hereby stipulated by and between the parties hereto, plaintiff and defendant herein, that it shall not be necessary for the plaintiff to set up by way of supplemental petition any sum claimed to be due from the defendant to the plaintiff under the lease contract sued upon in this action, accruing since the filing of the original petition, but the evidence at the trial may cover all sums claimed to be due from the date of the filing of the petition up to the date of trial, the same as if included in the original petition and embraced n the original defense.

The lease contract provides for the lease of the property from the 1st day of March, 1911, to the 1st day of March, 1915, at an annual rental of $10,200, payable monthly in advance in installments of $850 each. Among the stipulations in the lease the following appears:

. "Said premises, or any part thereof shall not be assigned, let or underlet, or used, or permitted to be used for any purpose other than first above mentioned, without the written consent of the said lessor or of his legal representatives first endorsed hereon, and if so assigned, let or underlet, used or permitted to be used without such written consent, the said lessor may re-enter said premises, either by force or otherwise, without being liable to prosecution or any claim therefor, and relet the said premises, this lease, by such unauthorized act, becoming void if the said lessor shall so determine and elect."

Also:

"And in case of assigning or subletting without consent as aforesaid, and acceptance of rent by the lessor from such assignee or sublessee shall not be construed as a consent to the assignment or subletting of the term, but shall be construed as a waiver thereof only for the period for which the rent is accepted, and such assignee or sublessee shall at the option of the lessor be regarded as a tenant from month to month."

It is urged by the defendant that the First State Bank became hopelessly insolvent, and, its affairs having been taken over by the state bank commissioner, it ceased to exist as a going concern, and, becoming entirely unable to discharge its financial obligations, that the action of the bank commissioner in permitting R. C. Menefee and his associates to secure the cancellation of the capital stock and cause new certificates of stock to be issued to them, and in allowing

R. C. Menefee and his associates to reopen said bank under the same name and charter, in legal effect created a new corporation, and that such new corporation was not liable for the debts or contracts of the old; that the reorganized bank was not impressed with the legal or moral obligation of paying any of the debts or complying with any of the contracts of the old First State Bank; that the reorganized bank is not liable to the owner of the building involved in the contract, unless it appears that such bank since its reorganization has specifically assumed and agreed to accept the lease, or unless its conduct has been such as to cause it, by implication of law, to have agreed to carry out the contract with the owner of the building, and unless the owner of the building has specifically or impliedly accepted the bank as reorganized as its tenant pursuant to the conditions of the lease.

It is also contended that the provisions of the lease above quoted, to the effect that, in case of assigning or subletting without the owner's consent, the owner at his option may declare the lease void, is unilateral, as it affects a sublessee, and that the reorganized bank, being a sublessee, had a corresponding option to declare the lease at an end.

Unless in legal effect the First State Bank was extinguished and a new corporation created the defendant is bound by the terms of the contract, and whether after reorganization those in charge of the bank assumed or refused to assume liability is not material. It is also true that, in the absence of such legal effect, the defendant does not occupy the status of a sublessee, and the argument of counsel that the contract is unilateral and not enforceable as to a sublessee would be of no avail.

It cannot be contended that the placing of the First State Bank in the hands of the state bank commissioner released it from liability for its contracts, nor can it be said that the state bank commissioner and the banking board act as a sort of bankruptcy court, with jurisdiction and power to dispose of the assets of an insolvent state bank for the benefit of the depositors' guaranty fund, relieve such bank from liability for its remaining debts and contracts, and authorize its resuming business free from such obligations.

If the First State Bank has not lost its identity, it is bound by any lawful contract into which it has entered. Such being true, the important question to be determined in this case is, Do the facts justify the conclusion that, in legal effect, the First State

Bank as reorganized became a new corporation? Neither the plaintiff nor the defendant has favored us with authorities on this particular question, while able briefs have been filed touching other questions.

The state bank commissioner is authorized, under certain conditions, to take over the assets of a state bank, conduct its affairs, enforce certain liabilities, and, if necessary, under order of court, dispose of assets in order to protect the depositors' guaranty fund, but such action is not tantamount to the dissolution of the corporation. Liquidation is not dissolution. The bank in the instant case could be dissolved only by a judicial determination brought about either voluntarily or by the sovereignty. Those interested in the corporation would be entitled to a day in court. The function of the banking board is to supervise and manage the depositors' guaranty fund, and to adopt suitable rulings and regulations for the management or administration of the same. Neither the bank commissioner nor the banking board has authority to create, destroy, or transmute corporate existence. A banking corporation can be formed only by the incorporators pursuing the statutes and obtaining a charter from the Secretary of State. Its corporate life can be terminated only in the manner provided by law. The right to be a corporation and the franchise to conduct business should not be confused. The franchise to do a banking business is controlled by the bank commissioner, subject to statutory regulations. In the event of certain contingencies, defined by statute, such franchise may be withdrawn, but such withdrawal does not destroy the life of the corporation.

It is provided by the statute (section 303 et seq., Rev. Laws 1910) that the state has a first lien upon the assets of a bank or trust company and all liabilities of stockholders and officers as well as liabilities of all others to the corporation for the benefit of the depositors' guaranty fund, and that, under order of the court, the bank commissioner may sell the real and personal property of the corporation, and, if necessary, enforce liabilities of stockholders, officers, and directors, collect all debts and amounts due, compounding bad or doubtful debts. It is therefore possible that the bank commissioner may, in the interest of depositors, sell the franchise to conduct the particular business, and the purchaser at such sale may acquire such right, but the charter to be a corporation cannot be transferred. Such a transfer would destroy the right of action by or against the corporation, and would

impair the obligation of contracts. Those having claims against a corporation cannot be deprived of their right to prosecute such claims. Such right may be very valuable; for a corporation may be unable to meet its obligations to-day and by some turn in its affairs it may be wholly solvent tomorrow. The corporation may have rights of action in its favor, and it should not be deprived of the power to maintain them. The charter of a corporation represents its life existing by the fiat of the sovereignty, and is no more the subject of barter or sale than the life of an individual existing by Divine Will; and, as individual existence is not transferable, so the being of the corporation cannot be transmuted into another and different corporate entity.

We think that the proposition that the bank commissioner cannot, by reorganization or otherwise, absolve a bank from its contractual obligations is fundamental. That the Legislature has power to grant such authority is doubtful; but, if we concede such power in the Legislature, it is evident that the Legislature has not intended to exercise the same, as will appear from section 306, Rev. Laws 1910, being the only authority found in the statutes for the reorganization of an insolvent bank, and reading as follows:

"After the bank commissioner shall have taken possession of any bank or trust company which is subject to the provisions of this chapter, the stockholders thereof may repair its credit, restore or substitute its reserves, and otherwise place it in condition so that it is qualified to do a general banking business as before it was taken possession of by the bank commissioner; but such bank shall not be permitted to reopen its business until the bank commissioner, after a careful investigation of its affairs, is of the opinion that its stockholders have complied with the laws, that the bank's credit and funds are in all respects repaired, and all advances, if any, made from the depositors' guaranty fund fully repaid, its reserve restored or sufficiently substituted, and that it should be permitted again to reopen for business; whereupon said bank commissioner is authorized to issue written permission for reopening of said bank in the same manner as permission to do business is granted after the incorporation thereof, and thereupon said bank may be reopened to do a general banking business."

It will be noticed that the section quoted authorizes the reopening of the same bank, not another, in the event of the stockholders meeting requirements which will give it credit and standing, and which will inspire confidence in its ability to perform its contracts. The law does not authorize the organization of another bank under the same name and charter, but provides for the reopening of the same bank. How could the bank be in the attitude of repudiating its contracts and the bank commissioner find that the bank's credit and funds are in all respects repaired? Counsel for defendant suggests that the opinion of this court in the case of Capital State Bank v. Western Casualty Co., 47 Okla. 549, 149 Pac. 149, is authority for the contention that defendant is not liable to the plaintiff in the instant case. We cannot better distinguish that case from the one under consideration than by giving the facts in the language of Mr. Chief Justice Kane, who delivered the opinion of the court:

"The facts upon which defendant relies for a defense may be stated briefly as follows: On or about the 25th day of April, 1913, the State Bank of Capitol Hill was taken in charge by the bank commissioner on account of its being in an insolvent condition. Prior to its insolvency it had received the deposit of $10,000 above mentioned, a deposit of $5,000 made by the treasurer of Oklahoma county, which were secured by idemnity bonds as required by law, and about $32,000 in general deposits, secured by the bank guaranty fund of the state. The bank commissioner, upon taking charge of the insolvent bank, proceeded to pay in full all the general depositors out of the bank guaranty fund, pursuant to section 303, Rev. Laws Okla. 1910, and to take charge of all the assets of the insolvent bank upon which the state, by virtue of the same section, had a first lien for the benefit of the depositors' guaranty fund. Thereafter the bank commissioner disposed of all the assets of the failed bank for the purpose of reimbursing the depleted bank guaranty fund, by transferring same to Messrs. Bonner, Dennis, et al., none of whom were connected with the failed bank, under an agreement whereby Bonner, Dennis, and associates assumed the payment of the general deposit liabilities of the failed bank, and further agreed to pay up a new capital of $10,000 in a new banking institution, to which the bank commissioner of the state agreed to issue a certificate permitting it to do business in the state of Oklahoma as a state bank. Thereafter, in pursuance of this agreement with the bank commissioner, Messrs. Bonner, Dennis, and associates organized the Capitol State Bank of Oklahoma City, the plaintiff in error herein, an entirely solvent concern."

It will be observed from the statement of facts quoted that a new banking institution, entirely solvent, was organized under a new name. Nothing is said about reorganizing the old bank. Banking corporations exist only by authority of statute, and there is no method prescribed by statute for organizing a new bank except by filing articles of incorporation, otherwise complying with the statutory requirements and procuring a charter from the Secretary of State. The court, in deciding the case, assumed that the new

bank was legally organized as will appear from the following language:

"The new institution, the Capitol State Bank, was organized legally, we assume, by Bonner, Dennis, and associates paying up a new capital stock of $10,000 in the new bank, whereupon the bank commissioner, pursuant to the agreement heretofore mentioned, issued a certificate permitting it to do a banking business under the laws of the state."

The court could not hold otherwise than that the new banking institution in lawfully purchasing the assets of the failed bank did not thereby assume its liabilities, and was bound only for the general deposit liabilities which were specifically assumed. But a different state of facts obtains where, as in the instant case, the bank was reopened or reorganized under the same name and charter. In Dartmouth College v. Woodward, 4 Wheat. 636, 4 L. Ed. 629, Chief Justice Marshall defines a corporation as follows:

"A corporation is an artificial being, invisible, intangible, and existing only in contemplation of law. Being the mere creature of law, it possesses only those properties which the charter of its creation confers upon it, either expressly or as incidental to its very existence. These are such as are supposed best calculated to effect the object for which it was created. Among the most important are immortality, and, if the expression may be allowed, individuality; properties by which a perpetual succession of many persons are considered as the same, and may act as a single individual. They enable a corporation to manage its own affairs, and to hold property without the perplexing intricacies, the hazardous and endless necessity of perpetual conveyances for the purpose of transmitting it from hand to hand. It is chiefly for the purpose of clothing the bodies of men, in succession, with these qualities and capacities that corporations were invented and are in use. By these means, a perpetual succession of individuals are capable of acting for the promotion of the particular object, like one immortal being."

In Tiffany on Banks and Banking, p. 345, the author says:

"A banking corporation, like other private corporations, may be dissolved in various ways, as by expiration of its charter, or by forfeiture of its charter for misuser or nonuser of its powers. A forfeiture takes effect only upon the judgment of a competent court, unless the Legislature has provided otherwise."

From McGee on Banking, p. 626:

"A state bank, unless the statute expressly provides that its charter shall be dissolved by the act of liquidation, can liquidate all of its affairs; i. e., pay all of its debts and afterwards reorganize and again do a banking business."

In Hall et al. v. Sullivan R. Co., Fed. Cas. No. 5948, the court holds that a corporation cannot transfer its own existence into another body, and that the right to be a corporation is not the subject of sale and transfer, as shown by the following language of the court:

"Among the franchises of the company is that of being a body politic, with rights of succession of members and of acquiring, holding and conveying property and suing and being sued by a certain name. Such an artificial being only the law can create: and when created, it cannot transfer its own existance into another body, nor can it enable natural persons to act in its name, save as its agents, or as members of the corporation, acting in conformity with the modes required or allowed by its charter. The franchise to be a corporation is therefore not a subject of sale and transfer, unless the law, by some positive provision, had made it so, and pointed out the modes in which such sale and transfer may be effected. But the franchises to build, own, and manage a railroad, and to take tolls thereon, are not necessarily corporate rights."

The same is held in State v. Western Irrigation Canal Co., 40 Kan. 99, 19 Pac. 352, 10 Am. St. Rep. 166:

"Even if the Enterprise Company had attempaed so to do, it could not, we suppose, sell or convey its corporate name, or its rights to maintain and defend judicial proceedings, or to make and use a common seal. It is not essential to the existence of a corporation that it should possess property."

The same view is expressed in People ex rel. Schure et al. v. Cook, Secretary of State, 110 N. Y. 443, 18 N. E. 113:

"The right to be a corporation, which the old corporation had, was not mortgaged and was not sold, and did not pass to the purchaser; and they only obtained such a right upon filing the certificate mentioned, and then they obtained it by direct grant from the state, and not in any degree by the sale and purchase of the franchises, etc., of the old corporation."

In Asheville Division No. 15 v. Aston, 92 N. C. 578, the court used the language which is in accord with our laws concerning the dissolution of corporations:

"A corporation cannot endure longer than the time prescribed by its charter, and no judicial proceedings are necessary to declare a forfeiture for such a cause, but for any other cause of forfeiture a direct preceeding must be instituted by the sovereign to enforce the forfeiture, and it cannot be taken advantage of in any collateral proceeding."

The defendant in the case at bar does not contend that there has been any judgment of the court dissolving the old corporation,

and admits that it maintains the name and charter of the First State Bank, one of the parties to the contract sued upon. Not only does the doctrine of estoppel apply, but the contention of the defendant is a collateral attack.

With reference to the power to relieve corporations from contracts and debts the court, in Bruffett et al. v. Great Western Ry. Co., 25 Ill. 353, very properly says:

"If the Legislature might release such bodies from liability to perform their engagements, or from paying their debts or damages incurred by a breach of contract or of duty, they would thereby impair the obligation of contracts existing between individuals and the company."

In the case of Higgins v. Downward et al., 8 Houst. (Del.) 227, 14 Atl. 720, 32 Atl. 133, 40 Am. St. Rep. 841, the court says in the syllabus:

"The Wilmington & Reading Railroad Company was incorporated under the laws of the state Delaware. Subsequently, under a decree of the United States Circuit Court, all the railroads of said Company, and all its rights, privileges, immunities, and franchises, exclusive of those granted by the state of Delaware, were sold to satisfy a mortgage. Afterwards the Legislature of Delaware, by act of February 22, 1877, incorporated the purchasers at such sale, and vested them with all the rights; title, interest, property, possession, claim, and demand at law or in equity of, in, or to such railroads, with its appurtenances, and with all the rights, power, immunities, privileges, and franchises of the corporation as whose property the same was sold. Held, that said act did not revoke the charter of said railroad company."

We see no force in the contention that the defendant, using as it does, the same name and charter, still is in legal effect a new corporation and absolved from the contracts of the old.

Is it possible that the First State Bank became inanimate and lost its entity just long enough to escape free its debts and contracts, and at once, by the touch of some magic wand wielded by the bank commissioner, the corpse sprang upon its feet, not itself any longer, but another being entirely, untrammeled by the obligations incident to its former existence, full-fledged, ready, and equipped to make its influence again felt in the channels of trade and commerce? If such be true, the bank commissioner of Oklahoma has brought about a transformation more wonderful than the dream of the ancient alchemists that they could transmute the baser metals into gold. If the alchemist transmuted iron into gold the substance became gold and was not iron any longer; but the defendant ascribes to the bank commissioner far greater power, a power to enable a helpless and hopeless being to lose its identity and existence, be transmuted into a new, separate, and independent creation, strong and virile, bearing the same name, having the same life, in law another being, but in fact the same. We do not think that either the bank commissioner or banking board intended such a paradoxical result. We must assume that such officers attempted to exercise only such power as was given them by law.

One of two propositions must be true. Either the First State Bank, as now conducted, is a collection of individuals assuming to do a banking business without corporate existence and in violation of law, or it is the same corporation that entered into the lease contract with the plaintiff. We do not hesitate to decide in favor of the latter proposition.

It appears from the agreed statement of facts, that our holding in this case does no violence to the original intention of those interested in the reorganization of the First State Bank. Banking institutions, of all business concerns, should stand for fair dealing; Menefee and his associates, as the new stockholders of the bank, having by written contract, accepted by them, purchased the assets of the bank, including the leasehold in question, it ought not to be urged that the institution they are conducting should escape such obligations as the contract imposes.

It is not necessary for us to determine whether or not the bank, after reopening for business, again assumed the lease contract, nor whether or not such contract could be avoided by a sublessee, yet we feel it not amiss to add that, in holding the defendant liable, we fix no burden not contemplated by those interested at the time of the contract with the banking authorities, and do no one any injustice.

The judgment of the trial court is affirmed.

By the Court: It is so ordered.