## LEVY et al. v. REED.

No. 7989—Opinion Filed Jan. 8, 1918.

Rehearing Denied Feb. 12, 1918.

(170 Pac. 497.)

**1. Banks and Banking — Franchises — Transfer.**

The privileges of becoming and being a corporation and of transacting a banking business under the laws of this state are fundamental franchises in their nature incapable of being imparted by any act of the incorporators of an unorganized banking corporation to other individuals and any attempt to so transfer them is void.

**2. Bills and Notes—Consideration—Transfer of Franchise.**

In an action by the payee against the makers of a promissory note executed to one of the incorporators of an unorganized banking corporation, in consideration of the transfer by him to the makers of the primary franchises of being a corporation and engaging in the banking business, held, that, such franchises being incommunicable between the parties, the attempted transfer thereof was ineffective, the payee parting with nothing, suffering no detriment, the makers receiving no benefit, and there was a total want of consideration for the note.

(Syllabus by Bleakmore, C.)

Error from District Court, Oklahoma County; Geo. W. Clark, Judge.

Action by S. E Reed against I. B. Levy and another. Judgment for plaintiff, and defendants bring error Reversed, and cause remanded.

Ledbetter, Stuart & Bell, for plaintiffs in error.

Warren K. Snyder and M. K. Cruce, for defendant in error.

Opinion by BLEAKMORE, C. This action seeking recovery on a promissory note, of date February 20, 1911, payable on or before April 1, 1911, was commenced in the district court of Oklahoma county by S. E. Reed, the payee, against I. B. Levy and H. W. Pentecost, the makers. Upon the face of the note appear the words, "Subject to contract." Contemporaneously with the execution thereof, and as a part of the same transaction, the parties entered into the following agreement:

"For and in consideration of the sum of twenty-five hundred ($2,500.00) dollars we hereby sell, transfer and deliver all of our right, title and interest in the State Bank of Commerce of Oklahoma City, Oklahoma, and herewith deliver unto I. B. Levy and his associates the charter and certificate of authority issued to the State Bank of Commerce of Oklahoma City, Oklahoma, and it is further agreed by the holders of said charter and certificate of authority that the above-mentioned twenty-five hundred dollars is due and payable and evidenced by one certain promissory note due immediately after the opening of said bank for active business, the date of said opening to be not later than April 1, 1911, unless prevented by the action of the state banking board or other legal authority.

"Dated this 20th day of February, 1911, to which we have hereunto attached our names.

"In the event that I. B. Levy and his associates are prevented by legal proceedings from using this charter, this contract is null and void and of no effect, and the charter to be returned to parties of the first part. And it is further agreed that said I. B. Levy and his associates will use every effort to carry into effect the full force of this contract."

"S. E. Reed.
"I. B. Levy.

"Witness: D. E. Waggoner."

In the petition it is alleged:

"(3) That at the time of the execution of said note the defendant I. B. Levy and this plaintiff entered into a contract for the sale of the State Bank of Commerce of Oklahoma City, together with the charter and certificate of authority issued to said bank authorizing the transaction of a banking business under the name of the State Bank of Commerce of Oklahoma City, Okla.; that a copy of said contract is hereto attached, marked 'Exhibit B,' and made a part of this petition.

"(4) That said charter and certificate of authority to do business were transferred under the terms of said contract to the said Levy and Pentecost, and are now in their possession and subject to their control, plaintiff herein having assigned all right, title, and interest in and to said charter and certificate of authority."

"(6) Your petitioner alleges that she has complied in every respect with the terms of the contract on her part, and alleges that no legal proceedings of any character was ever instituted to prevent the use of said charter, and that said charter is now in full force and effect, subject to the terms of this contract."

Defendants answered, admitting the execution of the note and contract, but alleging, among other defenses that the same are violative of public policy in that they constitute an attempt to sell and transfer a corporate franchise conferred by law.

It further appears by the pleadings that the plaintiff, S. E. Reed, E. S. Haraway, and S. M. Torbett filed articles of incorporation in the office of the secretary of state necessary to form a corporation to be known as the "State Bank of Commerce," with a capital stock of $25,000 and principal place of business at Capitol Hill, Okla., pursuant to which a certificate of incorporation was issued on January 11, 1910; that certificate of authority to transact a general banking business was issued to the State Bank of Commerce on February 24, 1911; and that on February 27, 1911, amended articles of incorporation were filed by the same incorporators, under the same name, increasing the capital stock to $30,000, designating the principal place of business at Oklahoma

City, and certificate of incorporation issued thereupon.

The original articles of incorporation, the certificate of secretary of state issued pursuant thereto, and certificate of authority to engage in the banking business issued by the bank commissioner were delivered to defendants, all of which were tendered to plaintiff in the answer.

Trial was had to the court upon the pleadings and the following stipulation:

"It is hereby stipulated and agreed that the incorporated town of Capitol Hill was annexed to and became a part of Oklahoma City by ordinance which became effective from February 16, 1910.

"It is further stipulated and agreed that no organization under the original charter of articles of association took place more than one year after the date thereof, nor was any business done or commenced under said charter of articles of association within one year from the date thereof."

There was judgment for plaintiff, and defendants have appealed.

While by the briefs and able argument of counsel many interesting phases of the case have been presented, it is deemed necessary to consider but one question, determination of which we regard as decisive of the appeal, viz.: Are the franchises involved —(1) the right to become and be a banking corporation, and (2) its privilege to engage in the banking business—under the circumstances of this case, proper subjects of sale and transfer? It may be reasonably inferred from the record, and was admitted in argument, that no single step looking to its organization was ever taken after the corporation was formed. Manifestly, therefore, the only individual interest plaintiff had in the State Bank of Commerce was in the naked articles of incorporation to participate, as incorporator, in the organization of the corporation, to the end that it might then engage in the banking business; and, if communicable by the means employed, it cannot be successfully contended that the parties only contemplated, and the transactions in question involved merely, the transfer of such inchoate personal interest. On the contrary, it is evident from the language employed in the contract, and the manual delivery of the articles of incorporation and the certificates issued pursuant thereto, and the allegations in the petition, that it was the intention of plaintiff to transmit, and of defendants thereby to procure, the franchise to be a corporation, together with the franchise of such

corporation, as the State Bank of Commerce, to transact a banking business. No question of a transfer of the shares of its stock effecting a conveyance of corporate property, or a change in the personnel of the corporation, is involved, or even suggested.

In this jurisdiction the privilege of engaging in the business of banking as a state bank is itself a fundamental franchise, conferrable only upon banking corporations organized conformably to statute. No individual, firm, or purely private corporation can transact such business in this state. Section 272, Rev. Laws 1910. The validity of such prohibition has been upheld in Noble State Bank v. Haskell, 22 Okla. 48, 97 Pac. 590.

The state alone has power to grant the right to become and be a banking corporation, as well as the privilege of a corporation formed and organized for that purpose to transact a banking business. Each such right is primarily personal, in the one instance to the incorporators, in the other to the corporation, and neither can be sold or transferred without the consent of the state. State banks are quasi public corporations. "Banks are chartered by the state, not with a paramount view of enabling the stockholders to make investments and derive profits therefrom, but to meet a public necessity." Noble State Bank v. Haskell, supra. In the First State Bank of Oklahoma City v. Lee, 65 Okla. 280, 166 Pac. 186. it is held:

"The right to be a corporation is not the subject of barter or sale."

In Memphis, etc., R. R. Co. v. Berry, 112 U. S. 609, 5 Sup. Ct. 299, 28 L. Ed. 837, it is said by the federal Supreme Court:

"The franchise of becoming and being a corporation, in its nature, is incommunicable by the act of the parties and incapable of passing by assignment. 'The franchise to be a corporation,' said Hoar, J., in Commonwealth v. Smith, 10 Allen, 448, 455 [87 Am. Dec. 672], 'clearly cannot be transferred by any corporate body of its own will. Such a franchise is not, in its own nature, transmissible.' In Hall v. Sullivan R. R. Co. [Fed. Cas. No. 5,948] 21 Law Rep. 138, 2 Redf. Rail. Cas. 621; 1 Brunner. Collected Cases, 613, Mr. Justice Curtis said: "The franchise to be a corporation is therefore not a subject of sale and transfer, unless the law, by some positive provision, has made it so, and pointed out the modes in which such sale and transfer may be effected."

In State, for use, etc., v. Butler, 83 Tenn. (15 Lea) 104, it is held:

"A transfer of a mere charter conferring a franchise on certain persons to conduct a banking business with which was granted immunity from other taxation than that expressly stipulated in the charter, does not convey the franchise to the transferee. A franchise is a right to privilege conferred by law, and is personal to the grantees, and cannot be transferred without the consent of the grantor." Detroit Citizens' Street Ry. Co. v. Common Council of Detroit, 125 Mich. 673, 85 N. W. 96, 86 N. W. 809, 84 Am. St. Rep. 589.

In Fietsam v. Hay, 122 Ill. 293, 13 N. E. 501, 3 Am. St. Rep. 492, it is said:

"The People's Bank of Belleville, incorporated under a special act of the Legislature, approved and in force March 27, 1869, having become insolvent, on the 17th day of April, 1878 made a general assignment of all its property and effects for the benefit of creditors. The assignee presented a petition to the county court of St. Clair county, at its March term, 1887, for leave to sell 'all the rights, privileges, powers, and immunities which were granted by the said act incorporating said bank.' * * * Upon due consideration of the petition, that court entered an order dismissing the same. * * * It is proposed here, it will be noted to sell simply the franchise of the bank. Assuming this can be done, the question arises. What would be the effect of such a sale? It clearly could not have the effect of making the purchasers, if more than one, an aggregate corporation, with the general banking powers conferred by the bank charter. To assert such a proposition would be simply starting; and yet, if in such case the purchasers could take anything at all, they certainly could not take less than the right to be a banking corporation, with all the powers and privileges conferred by the charter for these rights, one of the very essence of the franchise; and consequently the one could not be thus acquired without, by the same act, securing the others, a view which, as already indicated, has no sanction in reason or authority."

See Thompson on Corporations (2d Ed.) c. 101.

As we have seen, the transaction between the parties was ineffective to transfer the incommunicable primary franchises of being a banking corporation and of engaging in the banking business; and therefore, having parted with nothing, plaintiff suffered no detriment, defendants received no benefit, and there was a total want of consideration for the note in suit.

It follows, therefore, that the judgment of the trial court should be reversed, and the cause demanded.

By the Court: It is so ordered.