## CRESSEY v. MEYER.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF LOUISIANA.

No. 145. Argued January 12, 1891. — Decided March 2, 1891.

The right of a sovereign to enforce all obligations due to it, without regard to statutes of limitation, or to the defence of laches, does not pass to its creditors; and its intervention and appearance in a suit, in the nature of a garnishee process, brought by one of its creditors as against its debtors, does not give to such creditor its sovereign exemptions from liability to such defences.

THE Consolidated Association of the Planters of Louisiana was a banking corporation established by an act of the legislature of that State of date March 16, 1827, as amended by an act dated February 19, 1828. The capital, as fixed by the first of those acts, was two millions of dollars, which was to be raised by means of a loan obtained by the directors of the corporation. The act also provided, in section 2, for stock to the extent of five thousand shares of five hundred dollars each, or a total of two millions and a half of dollars. As security for their subscriptions to this stock, which could be taken only by planters and was transferable only to them, the subscribers were to give real estate mortgages, and, to obtain the capital as named, for the business of the institution, the corporation was to issue bonds payable, respectively, in five, ten and fifteen years. The thought and purpose were that the subscribers should not advance any money, but that the consolidation of their credit in one institution would enable it to secure an abundance of capital, and that the profits of that capital, used in the banking business, would be sufficient not only for the expenses of the corporation, but also to discharge the liabilities assumed by the stockholders by their mortgages to the institution. The amendment of the act of the succeeding year increased the authority to borrow, from two millions to two and a half millions of dollars, and the stock, from two and a half to three millions of dollars. It also provided that the

State should issue its bonds to the institution to the amount of two millions and a half of dollars; that it should take all the securities of the stock, with accompanying mortgages, and also receive a bonus of one million of dollars in stock. This scheme was carried out; the bonds of the State were issued; the stock was subscribed; and the corporation, possessed of capital, went into the banking business. The subscribers to the capital stock paid nothing, but simply gave their secured notes to the corporation. The State issued to the institution its own bonds for two and a half millions of dollars. In other words, the State furnished the capital and secured itself by individual obligations. The first series of state bonds were paid as they became due, but by authority of the act of March 31, 1835, for the remainder new bonds were issued, payable in 1848. The banking scheme was a failure. The bank continued in business until 1842, when, on November 17, its charter was declared forfeited for insolvency, at a suit of the State. In anticipation of this decree of forfeiture, the legislature of 1842 passed four acts: one, entitled an act to revive the charters of several banks located in the city of New Orleans, and for other purposes, approved February 5; another, to amend this act, approved March 7; another, approved March 11, relieving from the rule requiring the reinscription of mortgages at the date of ten years from registry the mortgages given by the stockholders to this bank; and fourth, of March 14, entitled an act to provide for the liquidation of banks. This last act provided forfeiture proceedings in the name of the State, and for the appointment by the governor of a board of managers to wind up its affairs. On April 5, 1843, another act was passed, declaring that the assets of this bank should remain in the possession and under the exclusive management of the State until the final payment of all bonds issued to it by the State. On April 6, 1847, an act was passed authorizing the managers of the bank to extend by endorsements the bonds in favor of the bank issued by the State to six, nine, twelve, fifteen and eighteen years, with a privilege to each stockholder to discharge his obligation to the bank and cancel his subscription by surrendering bonds of the State proportionate to

the amounts due from him by his subscription. It was further provided that the managers should require such annual or periodical payment by the stockholders as would finally pay the bonds due the State ; and that the amount might be distributed through the succeeding seventeen years. This legislation, so far as. any action on the part of the bank was necessary to give it force, was accepted. On examination, it was found that the deficiency of assets would be about $500,-000 ; and that a contribution of one. hundred and two dollars per share, payable in seventeen equal annual instalments, would be sufficient to pay off these bonds, and such an assessment was duly ordered.

This suit was commenced by the filing of a bill in the Circuit Court of the United States on December 12, 1883, by William Cressey, an alien, against the bank and its board of managers and directors ; and afterwards, by an amended bill filed January 24, 1884, against a large number of stockholders, setting forth the plaintiff's ownership of certain bonds issued by the State under the act of 1847, portions of which had been paid, and seeking to charge these stockholders for the unpaid portion of the amounts due from them under the settlement of 1847, above referred to. Subsequently, the State of Louisiana intervened, and was admitted as a party *pro interesse suo.* On proofs and hearing, the defences of the stockholders were sustained, and the bill as to them dismissed.

*Mr. George A. King* and *Mr. Charles W. Hornor* for the State of Louisiana. *Mr. Walter H. Rogers,* Attorney General of that State, was with them on the brief. *Mr. Joseph P. Hornor* and *Mr. Guy M. Hornor* were on the brief as for Cressey.

*Mr. J. D. Rouse,* (with whom was *Mr. William Grant* on the brief,) for appellees.

MR. JUSTICE BREWER delivered the opinion of the court.

One proposition alone requires notice. This was an action by a creditor of the State not against· his debtor, but against

its debtors, to secure an appropriation of their debts to it to the satisfaction of its obligations to him. It is a proceeding of a garnishee nature. The appearance of the State, voluntarily, its application to be made a party *pro interesse suo*, may avoid all questions as to the right of the plaintiff to maintain this suit. Conceding that such a suit is proper, it still remains in the nature of a personal action by one individual against another. As against such a suit, laches and limitations are in a court of equity sufficient defences. The settlement, which was practically between the State and its debtors, was made in 1847. Thirty-six years thereafter this bill is filed. If the time for full payment given by the settlement of 1847 is subtracted, this suit was commenced nineteen years after the time fixed by that settlement for the last payment had passed. Limitation and laches forbid that this suit should be sustained. It may be that, as against the sovereign, no statutes of limitation run; and it may be that, in the courts of Louisiana, the State may enforce all obligations due to it no matter what period of time may have intervened since they were assumed; but that right is personal to the sovereign; it does not pass to any of its creditors; and its intervention and appearance in a suit brought by a creditor, as against its debtors, does not give to such creditor its sovereign exemption from liability to the statute of limitation and the defence of laches. Whatever, therefore, might be true if the State of Louisiana were suing in its own courts, this suit must be treated in the federal courts as one by an individual against individuals; and, brought nineteen years after by the terms of settlement between the State and its creditors the last payment was due from them to it, must be adjudged a stale claim. The decisions of the Supreme Court of Louisiana are in accord with this conclusion. *Association* v. *Lord*, 35 La. Ann. 425. That case was the counterpart of this, and the final conclusion of that court was against the right to maintain the action and on the ground of the staleness of the claim. The fact that much litigation had intervened during these years, that bankruptcy proceedings were pending, avails nothing to this plaintiff, who was no party thereto.

*The decree is affirmed.*