### ROBINSON v. FIRST NAT. BANK OF ARDMORE.

No. 13087—Opinion Filed Sept. 9, 1924.

Rehearing Denied Dec. 16, 1924.

(Syllabus.)

#### Equity—"Clean Hands"—"Doing Equity"— Authority of Officers.

Where an executive officer, or one whose rights and cause of action arise out of the official acts of a state officer, board, or tribunal, comes into a court of equity to obtain affirmative equitable relief which such officer is powerless to afford, we unhesitatingly demand that he come with clean hands and do equity to his adversary, and upon his failure so to do, we freely deny him relief and equity will grant the relief which he should have done.

Error from District Court, Carter County; B. C. Logsdon, Judge.

Action by W. T. Robinson against the First National Bank of Ardmore. From the judgment plaintiff appeals. Affirmed.

R. L. Disney, for plaintiff in error.

Potterf & Gray, for defendant in error.

LYDICK, J. The First State Bank of Mansville, Okla., became insolvent in the month of September, 1915, and the State Bank Commissioner took charge of same and

proceeded to liquidate the bank as provided by law. Eugene B. Wolverton was cashier of this bank, and at that time he individually owned a certain tract of real estate in which his bank owned no interest. His bank at that time was heavily indebted to the First National Bank of Ardmore. The State Bank Commissioner feared that the particular liabilities of the First State Bank, for the payment of which the state guaranty fund was liable, would exceed the available assets of that bank, and that he would be required to pay such deficit from that fund. The First National Bank believed its securities insufficient and that it would sustain a loss on the indebtedness due it by the First State Bank. The Bank Commissioner and the First National Bank pressed Eugene V. Wolverton for protection from his individual estate against losses occasioned by his bank, the operation of which had been under his personal management. It was, therefore, orally agreed by and between the Bank Commissioner, Eugene V. Wolverton, and the First National Bank that Wolverton should execute and deliver a deed conveying this particular tract of real estate in trust to the First State Bank for the sole purpose of protecting the state guaranty fund from possible loss on account of the insolvency of the First State Bank. It was further agreed that upon said land, and subject to the rights then conveyed by this deed of trust, Wolverton would execute a mortgage to the First National Bank to secure the said indebtedness to it then due. The deed and the mortgage were executed accordingly and filed of record.

Both Wolverton and the Assistant Bank Commissioner, who made the agreement for the Banking Department with him, testified that the deed was given only to protect the state guaranty fund against loss on account of payments which by law should be paid therefrom. D. Lacy, who, as president of the First National Bank, represented it in the making of this three-party agreement, said it was specifically recited that the claim of one Dunegan upon his time certificate should not be paid, and his testimony in that regard is undisputed.

The Bank Commissioner completed the liquidation of the First State Bank and from the proceeds of the assets of this bank alone, and without recourse to the land conveyed to it by Wolverton's trust deed, fully paid all those depositors and all others who, under the law, could in any event have claims upon the state guaranty fund. When this had all been done, one Dunegan presented to the State Banking Board for payment out of the state guaranty fund a time

certificate of deposit issued by the First State Bank before it became insolvent, same being for the sum of $8,000 and upon its face drawing interest only at the rate of four per cent. per annum. However, the bank in fact had been regularly paying six per cent. interest thereon for a long time and was under an oral agreement to continue to do so. Under our statute this fact bars this claim from being paid out of the state guaranty fund. The State Banking Board, in regular session and in the year 1915, disapproved and disallowed this claim against the state guaranty fund for reasons stated, and for years this particular matter concerning Dunegan's claim was a closed incident. In the year 1920, when the personnel of the State Bank Commissioner and Banking Board had changed, Dunegan again presented his claim for payment out of the state guaranty fund, and in the year 1920, five years after it had been formally disapproved, the State Bank Commissioner, but not the Banking Board, allowed the claim in the sum of $6,400, and caused same to be paid in that amount out of the state guaranty fund. Thereupon the State Bank Commissioner asserted title to the land under the trust deed and by the statutory procedure provided he sold same through an order of the district court of Carter county unto W. T. Robinson, plaintiff in error here. At that time and before Robinson bought this land from the Bank Commissioner, the mortgage to the First National Bank was of record and wholly unsatisfied, and representatives of that bank informed Robinson of all these facts and warned him to beware of the lien claimed by the First National Bank under its said mortgage. Robinson bought the land, received and recorded his deed from the Bank Commissioner, and, asserting title thereto, he brought this suit in the district court of Carter county against Eugene V. Wolverton and the First National Bank to quiet his title. The First National Bank answered and filed a cross-petition pleading the facts as stated, and sought to cancel the deed given to Robinson and to obtain a decree of the court that the equitable title in said land was vested in Wolverton, subject to the mortgage given to it. Wolverton filed a similar answer. Robinson, by way of reply, asked that in the event the court should find the deed given by Wolverton to the First State Bank was intended only as a trust deed and a mortgage, Robinson be decreed to have a first lien upon this land to secure the repayment to him of the $6,400 paid out of the state guaranty fund on the Dunegan claim by the order of the Bank Commissioner, claiming that by the Bank Commissioner's deed to him, he was, in effect

107—6

the assignee of this claim, and that it was secured by the trust deed. The case was tried to the court without a jury, and the court made its separate findings of fact and conclusions of law, finding the facts generally against the plaintiff, Robinson, and in favor of the defendants, and consistent with the foregoing statement. Judgment went accordingly, and the plaintiff, Robinson, brings the case here on appeal by petition in error with case-made attached.

Now, the Bank Commissioner, by virtue of this trust deed executed by Wolverton to the First State Bank, did not acquire title to this land. As the official head of the Banking Department he thereby held only a lien on this land to secure the repayment to the guaranty fund of such sums, if any, that may have been lawfully paid out therefrom in the liquidation of the First State Bank. Not holding the absolute title to this land, he was without authority to sell same without proceeding regularly in the district court for the determination of the amount of the debt secured by such lien, a judgment for the foreclosure of his lien, and the judicial sale of the premises accordingly. This he did not do. Robinson purchased this land from the Bank Commissioner with both constructive and actual knowledge of all the facts. He is not an innocent purchaser for value and does not here so contend. His rights, therefore, are only those of a mortgagee in possession, and thus we will treat him. Robinson, as a mortgagee in possesion, has a lien on the land superior to the lien of the First National Bank to secure that sum and only that sum which has been lawfully paid out of the state guaranty fund in the liquidation of the First State Bank, and which according to the oral agreement had between the State Bank Commissioner and Wolverton, the trust deed was given to secure.

When, in the course of the trial, evidence was produced by the defendants showing the deed executed by Wolverton was not an instrument of absolute conveyance, but one merely granting a lien to secure the contingent payment by the grantee of certain undetermined moneys, then the burden of proof shifted to Robinson, whose case rested on the rights of the State Bank Commissioner, to prove, first. that moneys had been paid out of the state guaranty fund in the liquidation of the First State Bank: and, second. that such moneys were lawfully and necessarily paid out in accordance with the oral trust agreement. He met the first requirement and proved the payment of the sum of $6,400, but the evidence conclusively shows this money to have been paid out on the

Dunegan claim unnecessarily and illegally. As to the second requirement he failed.

But, says the plaintiff in error here, the State Bank Commissioner ultimately decided that the sum of $6,400 should be paid on the claim, and his decision is final and cannot be reviewed by this court in this collateral attack. He quotes from Merchant v. Bothwell, 1 Mo. App. Rep. 131, 60 Mo. App. 341, where the court said:

"The decision of an officer whose jurisdiction depends upon a fact which he is required by law to ascertain and settle is conclusive as against a collateral attack."

We are referred to the decisions of this court in Lovett v. Lankford, 47 Okla. 12, 145 Pac. 767, and State ex rel. v. Norman, 86 Okla. 36, 206 Pac. 522. In the first of these cases we refused to issue a writ of mandamus to control the discretion of the Bank Commissiosner and Banking Board in the discharge of its administrative and executive functions, and in the second case declined to permit a district court, through the appointment of a receiver, to divest the State Bank Commissioner of his statutory right and duty to liquidate a failed state bank. Our refusal to control, by mandamus. the discretion of the Bank Commissioner and Banking Board in the performance of their administrative and executive duties under the statutes was based largely on the recognized fact that such judicial action "would harrass and create confusion, the effect of which would be to destroy the efficiency of such board." This rule we follow even though it clearly appears that the actions attacked are ill advised and do great injustice in specific instances to the individuals involved. The interests of society in general must be paramount to the individual, and the rule announced is necessary for the general welfare of all the people, although it occasionally causes the individual a loss. We approve the rule generally as a matter of necessity and legal expediency. but its harshness constantly cries out for exceptions, and the wrong often done by its application is sometimes persuasive to a degree for its abrogation. This rule we have always invoked where necessary to prevent destructive confusion in the executive administration of the law by the Banking Department. but the rule will not be unnecessarily extended.

Where an executive officer, or one whose rights and cause of action arise out of the official acts of a state officer. board or tribunal. comes into a court of equity to obtain affirmative equitable relief which such officer is powerless to afford. we unhesitatingly demand that he come with clean hands

and do equity to his adversary, and upon his failure so to do, we freely deny him relief and equity will grant the relief which he should have done. The Dunegan claim had once been formally denied and was resurrected years later for an informal allowance under most suspicious and unexplained circumstances.

Without admitting that mere proof of payment of this $6,400 by the Bank Commissioner is prima facie evidence of the fact that it was due, we hold that it is at least not conclusive under all the facts in this case, and that the admitted facts and circumstances conclusively prove the payment to have been unlawful. Had the state desired to be generous and charitable in making contribution to the unfortunate holder of this time certicate upon which the depositors' money had been illegally paid as excess interest, it should have based its generosity upon its own expense and not upon the proceeds of the sale of land belonging to Eugene V. Wolverton. It is sufficient to say that the undisputed testimony of Mr. Lacy is that it was specifically agreed that this trust deed should not secure the payment of the Dunegan claim. It is true that this bit of a banker's testimony is a most ingenuous and ripely opportune thought of a vitally interested witness, deposed for the first time at the trial when other witnesses to the agreement were far removed. The truthfulness of this evidence may well be suspicioned and its weight thereby weakened, but its stands in the record undisputed and does not portray a story of facts so unreasonable as to justify its complete rejection. We must, therefore, adopt the statement as a fact and thereupon consider that the trust deed cannot hold the land to secure a reimbursement of this $6,400, regardless of the legality of the payment or the otherwise binding effect of the Bank Commissioner's determination that it should have been paid.

Robinson, although duly warned, rushed in to tread where danger lurked and disaster threatened. We cannot in equity grant him relief that will do inequity to those whose trust was violated by those through whom Robinson, with knowledge thereof, obtained his claim asserted here. The office which the trust deed was created to serve was fully discharged and the deed entitled to a release before Robinson acquired his claim thereunder. The lower court so held, and its judgment we affirm.

JOHNSON, C. J., and BRANSON, HARRISON and WARREN, JJ., concur.