## SAVOY OIL CO. v. EMERY et al.

No. 18020. Opinion Filed Sept. 25, 1928.

Rehearing Denied June 11, 1929.

Aby & Tucker and Hagan & Gavin, for plaintiff in error.

M. B. Cope and A. L. Emery, for defendants in error.

RILEY, J. On January 25, 1922, the superior court of Okmulgee county rendered judgment, quieting title to a described 160 acres of real estate located in said county, in the Savoy Oil Company and F. S. Hurd. On November 10, 1926, the said court vacated that judgment on the petition of the state of Oklahoma on the relation of O. B. Mothersead, Bank Commissioner, and from the or-

der vacating the judgment, the Savoy Oil Company has prosecuted this appeal.

The Central State Bank of Keifer began the original action in 1920, against F. S. Hurd and the Savoy Oil Company, and sought to quiet title to land situated in Okmulgee county described as the S. E. ¼ of section 19, township 16 north, range 14 east.

Hurd answered that he was in plaintiff's chain of title, and that he had conveyed to plaintiff's grantor, Smith, a portion of the estate, but had reserved to himself a two-fifths interest in the mineral rights thereof. The Savoy Oil Company filed its "Answer and Counterclaim," and based its title on a resale tax deed of September 26, 1917. It pleaded the statute of limitations, estoppel by receipt of plaintiff and its grantor of the surplus paid by it as purchaser at tax sale. It prayed that the defendant and counter-claimant, Savoy Oil Company, be adjudged to be the owners of the premises and that they be awarded possession and decree quieting title. Hurd answered and cross-petitioned, alleging the invalidity of the resale tax deed in so far as it purported to affect his undivided two-fifths interest in the mineral rights. The Savoy Oil Company replied, and the Central State Bank filed reply to Hurd's cross-petition. On October 15, 1921, there was filed in the cause a motion to substitute the state of Oklahoma ex rel. S. P. Freeling, Attorney General, as party plaintiff under the allegation that on November 4, 1921, the plaintiff bank had been taken over as an insolvent banking institution by the Bank Commissioner of the state. It does not appear, affirmatively, that action was taken on said motion, but on January 25, 1922, the judgment aforesaid was rendered decreeing the Savoy Oil Company owner of all surface and three-fifths of the mineral rights in the 120 acres described in its answer and counterclaim, and adjudging Hurd to be the owner of an undivided two-fifths interest in the mineral rights therein. The judgment recites that the Central State Bank failed to appear and that its petition was dismissed for want of prosecution, and that upon evidence the court found in behalf of counterclaimants, Hurd and Savoy Oil Company, and quieted their title.

The petition to vacate the judgment filed by O. B. Mothersead, October 5, 1926, alleges the proceedings leading up to the judgment substantially as heretofore set out; it then alleges insolvency and possession of the plaintiff bank by the Bank Commis-sioner on May 4, 1921, the filing in the cause then pending of the motion of the Attorney General to substitute the state of Oklahoma ex rel. as party plaintiff, and the rendition of the judgment on January 25, 1922, "while said motion was pending and un-determined by the court"; it asserts that the judgment so rendered is void for the reasons:

(1) That by failure of plaintiff bank its cause of action had become the property of the state.

(2) The judgment in reality was a judgment against the state and rendered without its consent.

(3) That at the time of rendition of the judgment the plaintiff bank "was in legal contemplation dead."

(4) That the motion of the Attorney General was undisposed of at the time of judgment.

(5) That no notice was given to the Attorney General of the setting of said cause for trial as required by section 666, C. O. S. 1921.

On November 10, 1926, there was filed the "Answer of Savoy Oil Co. to Petition Filed by O. B. Mothersead, Bank Commissioner, to Vacate and Set Aside Judgment," wherein a restatement was made of the pleadings of the original cause, and a denial that the judgment was void and a categorical denial of the grounds alleged in the motion to vacate, and denial that the state of Oklahoma, Bank Commissioner, or Attorney General ever became a party to the action, and de-nied, further, that the Attorney General was not notified of said cause being set for trial as required by law, but alleged that the cause was continued from October 3, 1921, to October 15, 1921, at the request of the Attorney General, and then continued to January 25, 1922, at the Attorney General's request, and that in the meantime the Attorney General advised the defendant that the state and the Bank Commissioner had no valuable claim in or to the property involved and that they had decided to abandon said motion to be made a party and had decided to do nothing further in the case or to assert any interest in the property involved.

The answer pleaded the statute of limitations and laches as a bar to the action to vacate the judgment, by reason of the lapse of more than four years with knowledge of the judgment, and it was further alleged, if the state of Oklahoma, or the Bank Com-

missioner, ever had any right or interest in the property in controversy, or right or interest in the cause of action, that such right, prior to the filing of the petition to vacate the judgment, was conveyed, assigned, and transferred by the execution and delivery of a deed dated September 24, 1924, whereby all right, title, and interest of the state of Oklahoma and of the Bank Commissioner was conveyed to A. L. Emery, which deed was duly approved and recorded, and therefore the state and its various departments had no present interest in the cause or property to authorize the filing and maintenance of the action to vacate the judgment; that movants were not proper parties and the said petition should be dismissed.

The state of Oklahoma ex rel. O. B. Mothersead, Bank Commissioner, replied to the answer, denying generally, but admitting the execution and delivery of the mentioned deed to A. L. Emery, and alleged that as a part consideration therefor the state of Oklahoma had agreed to proceed in the case and cause the vacation of said judgment.

Over the objections of the Savoy Oil Company, the hearing on the petition to vacate was heard in a summary manner, affidavits were introduced relative to lack of notice to the attorneys for the Bank Commissioner, and evidence introduced which had been admitted at a former hearing on November 8, 1926, in support of an application for a temporary injunction, whereupon the petitioner rested, and a demurrer of the defendant Savoy Oil Company was overruled and exceptions saved. The Savoy Oil Company introduced testimony of A. L. Emery showing that prior to the filing of the petition to vacate the judgment he had purchased for $150 all the interest of the state of Oklahoma in the premises in dispute and secured a deed therefor from the Bank Commissioner, which deed had been approved by the district court of Creek county. On cross-examination, the witness testified that as part of the consideration for the $150 paid, the state, through the Bank Commissioner, agreed to file its petition to vacate the judgment and to prosecute the same.

Frank Settle testified that he was an attorney for defendant in the original case, and that prior to January 25, 1922, W. H. Zwick, Assistant Attorney General and attorney for the Bank Commissioner, had a conversation with him relative to the cause. Objections were sustained to this conversation, thereupon the Savoy Oil Company offered testimony by the witness to the effect that the judgment of January 25, 1922, was taken with full knowledge of said Zwick, acting for the state and with his consent.

Whereupon the Savoy Oil Company introduced evidence showing an oil and gas lease upon the interest of F. S. Hurd in the land existing in favor of it, and rested its cause.

Whereupon the petitioner introduced evidence of J. S. Severson previously taken relative to the lease of the Savoy Oil Company, over objections, and rested.

The trial court sustained the petition to vacate the judgment (and the Savoy Oil Company gave notice of intention to appeal), a motion for new trial was presented and overruled and notice of appeal given.

Thereupon the motion to substitute the state of Oklahoma on the motion of the Attorney General was presented and allowed, over the exceptions of the Savoy Oil Company; a motion was made to dispossess the Savoy Oil Company from the land involved, which the court refused, and the court adjourned until November 13, 1926, when there was heard a motion for judgment on the pleadings and application for citation for contempt on the part of the substituted parties, as well as the application of the Savoy Oil Company to vacate a temporary injunction of the date of November 8, 1926. This last hearing was postponed to November 18, 1926, when a supplemental answer was permitted to be filed by the substituted parties.

The application for citation for contempt was abandoned and the substituted plaintiff's motion for judgment on the pleadings withdrawn and the temporary injunction relative to Savoy Oil Company's possession of the land was modified. To the court's ruling refusing to dissolve the temporary injunction and permitting the modified temporary injunction to continue in force, the Savoy Oil Company gave notice of appeal.

Appeal was lodged in this court on December 9, 1926.

We shall first consider whether the judgment of January 25, 1922, is void for the reasons asserted by the movant below. The first two grounds asserted in effect are that the judgment was against the state without the state's consent. The third is that at time of judgment the Central State Bank was in legal contemplation dead; the fourth concerns the pending motion to substitute the state ex rel. as a party plaintiff in the action; and the fifth alleges failure of notice to the Attorney General as required by section 666, C. O. S. 1921.

In Pettis v. Johnston, 78 Okla. 277, 190 Pac. 681, by paragraph 11 of the syllabus, is stated the rule as to when a judgment is void on its face:

"A judgment is void on its face when its invalidity is affirmatively disclosed by an inspection of the judgment roll, but it is not void in a legal sense, for the want of jurisdiction, unless its invalidity appears on the face of the record."

Therein, and in Edwards v. Smith, 42 Okla. 544, 142 Pac. 302, it is held:

"A judgment is not void in the legal sense for want of jurisdiction, unless its invalidity and want of jurisdiction appear on the record; it is voidable merely."

It may be observed therein to be settled that the judgment roll in Oklahoma is the record as prescribed by sections 686, 687, 688, C. O. S. 1921, and constituted by the "petition, the process, the return, the pleadings subsequent thereto, reports, verdicts, orders, judgments, and all material acts and proceedings of the court," is equivalent to the judgment roll at common law."

In McMechan v. Christy, 3 Okla. 301, 41 Pac. 382, construing section 4308, statutes 1893, which section became section 5146, R. L. 1910, and later section 688, C. O. S. 1921, it was held:

"From these sections it will be perceived that a motion to dismiss an appeal, a motion for a new trial, the evidence used on the trial, and the rulings of the court and exceptions thereto are not a part of the record."

The Attorney General's motion to substitute was not a pleading and no part of the record or judgment roll.

So, then, it may now be said that the judgment here considered is not void on its face, for the five grounds asserted do not appear on the record or judgment roll. London v. Merchant's Nat. Bank, 68 Okla. 59, 171 Pac. 719; School District v. Vinsant, 27 Okla. 731, 113 Pac. 714; Lamb v. Young, 24 Okla. 614, 104 Pac. 335; Mires v. Hogan, 79 Okla. 233, 192 Pac. 811; Putman v. Western Bk. Supply Co., 38 Okla. 152, 132 Pac. 483; Masoner v. Bell, 20 Okla. 618, 95 Pac. 239; Wallace v. Gay, 39 Okla. 774, 136 Pac. 737; Lockett v. Ely-Walker Dry Goods Co., 80 Okla. 131, 159 Pac. 324.

We, therefore, ho'd that the judgment of January 25, 1922, was not void upon its face for the reason of the first four grounds asserted.

We consider the fifth ground, to wit, that the Attorney General was not notified as to the judgment as required by section 666. C. O. S. 1921.

The judgment roll does not affirmatively show the notice prescribed by the section was given, nor does such record show that such notice was omitted, but rather than considering whether such notice was a process and dealing in presumptions and lack thereof, we consider the necessity of the notice under the facts of this judgment.

Section 666, supra, reads:

"No order shall be made by any county, district or superior court in this state dismissing, for want of prosecution, any action now pending or hereafter filed, wherein the state of Oklahoma is an interested party and in which the Attorney General, or any Assistant Attorney General shall appear as attorney of record for the state; nor shall any judgment by default against the state of Oklahoma be rendered by any such court in such action, unless proof is made that the Attorney General or Assistant Attorney General appearing as counsel for the state, shall have been notified in writing by registered mail, at least ten days prior to the date set for such trial or hearing that the action has been set for trial."

The first part of the section inhibits dismissal of an action for want of prosecution where the state is an interested party, and in which the Attorney General, etc., appears as attorney of record. etc. No notice is thereby required. The latter part inhibits a judgment by default against the state without proof of ten days' notice in writing to the Attorney General that the action is set for trial. This judgment being under the first part of the section by reason of the dismissal of plaintiff's petition for want of prosecution, we consider the phrase "interested party" to ascertain whether the same means interested party to the action or merely interest in the subject-matter.

Here we are dealing with a prescribed procedure for parties to an action. It is apparent that "interested party," used in the statute, refers to those for whom court procedure is prescribed, viz., parties to the action.

In C., R. I & P. Ry. Co. v. Mitchell, 19 Okla. 579, 101 Pac. 850, there was construed a statute requiring that when an affidavit verifying a pleading is not made "by the party himself" the reason shall be stated. and the court said, "The word 'party,' as used in these sections, evidently means party to the suit. * * *"

Such is the trend of decisions. Hiles v. M. P. & L. Co. (Wis.) 55 N. W. 175.

See People v. McClellan, 104 N. Y. S. 447, where it was said, "for in legal terminology, especially in a practice act, the word 'party' means a party to the action."

In Glaze v. Johnson (Tex. Civ. App.) 65 S. W. 662, it was held in construing such a statute that the phrase "party adversely interested" meant "party to the suit."

In the case at bar the statute prescribes that notice shall be given the Attorney General in all cases where the state is an "interested party." We hold that the word "party" was used in contradistinction to "person," and means a party to the action. It seems beyond doubt that such is the correct construction to be placed upon the statute, especially so when we consider the remainder of the clause, "and in which the Attorney General or any Assistant Attorney General shall appear as attorney of record," for certainly no attorney can appear in an action "as attorney of record" unless he appears for a party to the action.

Therefore, section 666, supra, requires notice to the Attorney General only when the state of Oklahoma is an interested party to the action and as condition precedent to a judgment by default.

Substitution of parties plaintiff did not exist at common law and is wholly a statutory proceeding, 20 R. C. L. 697. In this state substitution of parties is governed by section 223, C. O. S. 1921, which reads as follows:

"An action does not abate by the death or other disability of a party, or by the transfer of any interest therein, during its pendency, if the cause of action survive or continue. In case of the death or other disability of the party, the court may allow the action to continue by or against his representatives or successors in interest, upon such terms and in such time as may be just under the circumstances presented. In case of any other transfer of interest, the action may be continued in the name of the original party, or the court may allow the person to whom the transfer is made to be substituted in the action."

When the first contingency arises, to wit, death or disability, the court may allow the action to continue by or against the representative in interest. The act sweepingly provides what shall occur in the event of "other transfer of interest," and that provision is that the action may be continued in the name of the original party, or the court may allow substitution of parties.

The power of the court to render judgment cannot be limited by the fact of a stranger filing an application to be made a party, and the rendition of judgment between the parties without expressly passing upon the application of substitution must be deemed an implied exercise of the court's discretion in denial of the petition. Ferris v. Com. Natl. Bank, 158 Ill. 237, 41 N. E. 1118.

The contention that the judgment in fact is a judgment against the state and without its consent is untenable even if it be considered that the state was a party. State v. Wells, 98 Okla. 169, 223 Pac. 694; Home Flax Co. v. Beebe, 48 Ill. 138; Young v. State, 6 Ohio, 435; Johnson v. Erickson (Mont.) 185 Pac. 1116.

We hold that a judgment decreeing a state bank has no right, title, or interest in real property in dispute, where the bank was taken over after the commencement of the suit by the Bank Commissioner, is not a judgment against the State. Wenner, County Treasurer, v. Mothersead, 129 Okla. 273, 264 Pac. 816; State v. Wells, supra; U. S. v. Lee, 106 U. S. 196, 27 L. Ed. 171.

Section 666, C. O. S. 1921, requires notice to be given only where the state is an interested party to the action. In the case at bar, the state of Oklahoma was not an interested party to the action, and therefore it was not necessary to give the notice prescribed by said section. Therefore, the judgment of January 25, 1922, is not void for the fifth ground alleged.

We omit consideration of the procedure followed below relative to hearing this cause to vacate judgment not void on its face in a summary manner, for it would be more beneficial to dispose of this litigation on the merits.

We have said that insolvency of a bank is not dissolution. We may consider further the relation of the Bank Commissioner to an insolvent bank, in view of the contention that this is in fact a suit against the state. State ex rel. Strain v. Wells, 98 Okla. 169, 223 Pac. 694. In that case this court held a suit against the Bank Commissioner and the Oklahoma State Bank of Walters, an insolvent state bank, to foreclose a mortgage on a building, the fee title to which was in the name of the bank, was not a suit against the state.

The phrase "in case of any other transfer of interest" is more applicable to a condition of insolvency of a state bank when the institution is taken over by the Bank Com-

missioner than the former condition expressed in the statute, viz., "in the case of the death or other disability of the party." There may be said to be a transfer of interest, for the Bank Commissioner in such situations takes over the assets of the bank as a trust fund, to be devoted to the interest of the trust under the public policy of the state. Consequently, the transfer falls under the concluding part of the section, and the court may 'exercise the discretion of permitting. the action to continue in the. name of the original party or substituting the name of the party to whom transfer has been made. An order of court is required before substitution becomes effective. 20 Ency. P. & P. 1033; Smith v. Harrington, 3 Wyo. 503, 27 Pac. 803.

No substitution was made in this action prior to the judgment of January 25, 1922.

Since the judgment of January 25, 1922, was not void on its face, an action to avoid or vacate it under section 817, C. O. S. 1921, had to be commenced within three years from said date. The instant action was not begun until October 15, 1926, or more than four years, and consequently it was barred by the statute of limitations.

Section 817, C. O. S. 1921, reads as follows:

"Proceedings to vacate or modify a judgment or order for the causes mentioned in subdivisions 4, 5 and 7 of section 810, must be commenced within two years after the judgment was rendered or order made, unless the party entitled thereto be an infant, or a person of unsound mind, and then within two years after removal of such disability. Proceedings for the causes mentioned in subdivisions three and six of the same section shall be within three years, and in subdivision 9 within one year after the defendant has notice of the judgment. A void judgment may be vacated at any time, on motion of a party, or any person affected thereby."

The only answer that can be made to this statement of the statute of limitation is that the application to vacate was filed by the state of Oklahoma, against whom the bar is inoperative. In reply to such an answer it is apparent tthat the state was not the proper party to move to vacate the judgment, for the reason that the state, prior to the filing of the petition to vacate, had parted with all its interest in the land in dispute, as heretofore set out, and for the sum of $150.

Section 209, C. O. S. 1921, requires every action to be prosecuted in the name of the real party in interest. It is true. Brown v. Massey, 13 Okla. 670, 76 Pac. 226, holds that where the subject-matter of an action has been transferred, by a defendant, on whom judgment was obtained by publication, to a stranger, an application to vacate the judgment may be made in the joint names of the defendant and his transferee. Leslie v. Gibson, 80 Kan. 504, 103 Pac. 115, holds such application may be made in the name of the transferee alone.

This petition was not brought in the name of the transferee, nor in any joint name, nor in the name of the Central State Bank, but in the sole name of the state of Oklahoma.

We are familiar with no case that holds a vendor, who has parted with all his interest and who is under no valid obligation, can maintain an action to vacate a judgment in view of such a statute as section 209, supra (Kingkade v. Plummer, 111 Okla. 197, 239 Pac. 628), and where such vendor was not a party to the original judgment. The cases we read depend upon some real interest on the part of the vendor.

State ex rel. Wilson v. Shively, 10 Ore. 267, lays down the rule:

"The state cannot lend the power of its name, or assume the cause of one private citizen against another, for the purpose of settling rights or titles in controversy between them."

Insolvency of plaintiff bank did not result in the corporation becoming in legal contemplation dead, as alleged in the petition to vacate the judgment. This question was passed upon by this court in First State Bank v. Lee, 65 Okla. 280, 166 P. 186, L. R. A. 1918B, 609, where it was held:

"The State Bank Commissioner is authorized, under certain conditions, to take over the assets of a state bank, conduct its affairs, enforce certain liabilities, and, if necessary, under order of court, dispose of assets in order to protect the Depositors' Guaranty Fund, but such action is not tantamount to the dissolution of the corporation."

The principle of an agent of the state (the Bank Commissioner) binding the state in a position of servitude does not appeal to our conception of sovereignty.

The contract of the state's servant to bind the state to institute this lawsuit to set aside a judgment is most worthless and void and unworthy of consideration, and at any rate the plea of limitations would be available.

In cases where the government, although a nominal plaintiff, has no real interest in the litigation, but has allowed its name to be used therein for the sole benefit of a pri-

vate person, the defense of laches and the statute of limitation are available, the same as in suits between private individuals. United States v. Beebe, 127 U. S. 338, 32 L. Ed. 124; Curtner v. U. S., 525, 34 L. Ed. Cresser v. Myers, 138 U. S. 525, 34 L. Ed. 1018; Robinson v. First Nat. Bank, 107 Okla. 160, 231 Pac. 502.

This court said:

"Under the decisions of this court, unquestionably the Bank Commissioner occupies a position in taking charge and collecting the assets of a failed bank quite analogous to that of a receiver, and therefore is subject to the laws governing receivers to some extent." State ex rel. Strain v. Wells, 98 Okla. 169, 223 Pac. 694.

See Tracy v. First Nat. Bank of Selma. 37 N. Y. 523, where it was held, on an appeal sought by a receiver:

"The objection that the receiver has no status in court, I regard as fatal. The action was commenced against the bank before the appointment of a receiver, and, so far as the papers show, is still in progress under that title. There is no legal objection to its continuance in that form until final judgment is obtained, and such is the common practice in this state."

In Gadsden v. Whaley, 14 S. C. 210, it was held:

"A receiver of an estate has no right to interfere in a case pending at the time of his appointment, without an order of the court that appointed him."

As applied to receivers, and by analogy to be applied to the Bank Commissioner, is the principle that appointment of a receiver for a corporation that is a party to a pending action does not abate the action, but such action may be permitted to continue to final judgment as commenced, although the court has a right, if it so desires, to permit the receiver, upon timely application, to be substituted for the corporation for which he is appointed.

In St. L. C. & G. Ft. S. R. Co. Holladay (Mo.) 33 S. W. 49, it was held:

"In many instances it is not necessary to bring in the receiver; certainly not where the parties in interest are sufficiently represented before the court to enable it properly to determine the controversy." Chicago Fire Proofing Co. v. Park Nat. Bank, 145 Ill. 481, 32 N. E. 534.

Mercantile Trust Co. v. Pittsburg & W. R. Co., 29 Fed. 732, 23 R. C. L. 48, holds:

"The receiver does not by virtue of his appointment as such become substituted as a party, but is a stranger to the action until he is substituted by an order of the court wherein the action is pending."

So, then, when the Bank Commissioner takes possession of an insolvent bank, the legal entity of the corporation is not destroyed thereby. The corporation remains undissolved and no legal death ensues. First State Bk. v. Lee, 65 Okla. 280, 166 Pac. 186.

It follows that, since by operation of law the cause of action was not transferred and the Bank Commissioner substituted as a party, the cause remained as begun in the name of the Central State Bank, and the court had jurisdiction to render the judgment of January 25, 1922, notwithstanding the bank had been taken over by the Bank Commissioner.

Extensive argument is made that the deed of the Savoy Oil Company rests upon a tax deed, but we say, without considering the merits of the original judgment, for we have no power to do so, that "the judgment is no less conclusive because it is based upon a mistake of law." National Surety Co. v. Hanson Bldgs. Sup. Co., 64 Okla. 59, 165 Pac. 1136; American Express Co. v. Mullins, 212 U. S. 211, 53 L. Ed. 525.

The judgment is reversed, and remanded, with direction to dismiss the petition.

BRANSON, C. J., MASON, V. C. J., and PHELPS, LESTER, HUNT, CLARK, and HEFNER, JJ., concur.

Note.—See under (1) 34 C. J. p. 510, §811. (2) 34 C. J. p. 89, §239. (3) 18 C. J. p. 1191, §110; 34 C. J. p. 185, §404. (4) 1 C. J. p. 151, §241. (7) 36 Cyc. p. 919. (8) 34 C. J. p. 258, §487. (13) 34 C. J. p. 901, §1311. See "Banks and Banking," 7 C. J. §518, p. 742, n. 55. "Dismissal and Nonsuit," 18 C. J. §110, p. 1191, n. 14. "Judgments," 34 C. J. §239, p. 89, n. 36; §404, p. 185, n. 82; §752, p. 481, n. 76; §811, p. 510, p. 510, n. 23; §1311, p. 901, n. 87. "Limitations of Actions," 37 C. J. §28, p. 713, n. 13. "Parties," 47 C. J. §298, p. 162, n. 40. "States," 36 Cyc. p. 908, n. 11; p. 910, n. 38.