OSCN Found Document:STATE FARM FIRE & CASUALTY CO. v. PALUMBO et al.

 

 
 STATE FARM FIRE & CASUALTY CO. v. PALUMBO et al.2026 OK 51Case Number: 123739Decided: 06/23/2026SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2026 OK 51, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

STATE FARM FIRE & CASUALTY COMPANY, Petitioner,
v.
THE HONORABLE AMY PALUMBO, Oklahoma County District Judge, Respondent,
and
BILLY HURSH and LACY HURSH, Real Parties in Interest,
and
GENTNER DRUMMOND in his official Capacity as Attorney General of Oklahoma, Real Party in Interest.

ORDER

¶1 Original jurisdiction is assumed. Okla. Const. art. VII, § 4. The Court will assume original jurisdiction and grant extraordinary relief when the district court has exceeded its authority. Murrell v. Cox, 2009 OK 93226 P.3d 692Cannon v. Lane, 1993 OK 40867 P.2d 1235Billy & Lacy Hursh v. State Farm Fire & Casualty Company, No. CJ-2025-2626 (Oklahoma County), barring the enforcement of the December 30, 2025 order that granted intervention by the Attorney General.

¶2 On April 17, 2025, Billy Hursh and Lacy Hursh ("Hurshes") filed a petition against State Farm alleging breach of contract, bad faith, constructive fraud, and negligent misrepresentation following a dispute over hailstorm loss coverage. The district court later granted the Attorney General's motion to intervene, allowing the State to assert claims for injunctive relief and damages under the Oklahoma Consumer Protection Act ("OCPA"), 15 O.S.2021, §§ 75122 O.S.2021, §§ 140178 O.S.2021, §§ 51

DISCUSSION

¶3 The Court must determine whether the district court abused its discretion by permitting the Attorney General's request to intervene in the underlying litigation. Here, allowing intervention would impermissibly expand the scope of the underlying litigation, violating a fundamental procedural rule for intervention. Since the Court finds intervention was improper procedurally, we need not address the grounds for intervention or the remaining arguments raised by State Farm.

¶4 It is a fundamental procedural rule in Oklahoma that an intervenor must take the case as they find it; they are not permitted "to enlarge the issues or compel an alteration of the proceedings, or to include matters not germane to the issues presented." Gettler v. Cities Serv. Co., 1987 OK 57739 P.2d 515Franklin v. Margay Oil Corp., 1944 OK 316153 P.2d 486

¶5 The underlying litigation is a private contract dispute centered on a specific bad faith claim against State Farm for hail damage to a single property. The Attorney General's intervention transforms this narrow action into a broad, statewide proceeding. By merging numerous generalized claims with a single, concrete dispute in Oklahoma County, the nature of the litigation is fundamentally altered. Such an expansion forces the original parties to litigate issues untethered to the Hurshes' actual loss, effectively overwhelming the specific merits of the private claim with matters far exceeding the scope of the original petition.

¶6 The applicable law in the Attorney General's proposed claims diverges from the underlying bad faith action. The Hurshes' claims are governed by established principles of contract law and the duty of good faith. In contrast, the Attorney General's pursuit of RICO allegations introduce quasi-criminal elements that would not only impermissibly broaden the scope of this civil contract dispute but also the nature of the recovery sought. The Attorney General seeks public-interest remedies like injunctive relief, civil penalties, and disgorgement, which are fundamentally different from the Hurshes' private contract damages. Such an expansion is impermissible under Oklahoma law.

¶7 The proper recourse could be for the Attorney General to bring his claims in a separate, independent lawsuit, which avoids the restraints of Gettler on intervention. Likewise, State Farm could fully litigate its remaining arguments at that time before the district court, which are not addressed in this order. Indeed, the Attorney General admits his intent to file such an action. Maintaining these as distinct proceedings ensures that the State's broad interests are addressed in the correct forum while preserving the integrity of this private litigation.

¶8 Accordingly, we issue a writ of prohibition, barring the enforcement of the December 30, 2025 order that permitted the Attorney General to intervene in the underlying suit brought by the Hurshes.

DONE BY ORDER OF THE SUPREME COURT IN CONFERENCE THE 23rd DAY OF JUNE, 2026.

                                                                                                                                   /s/_________________________________
                                                                                                                                       CHIEF JUSTICE

CONCUR: Rowe, C.J., Kuehn, V.C.J., and Edmondson, Combs and Gurich, JJ.,and Downing and Huber, S.JJ.

CONCUR IN RESULT: Winchester (by separate writing) and Darby, JJ.

RECUSED: Kane and Jett, JJ.

Winchester, J., with whom Darby, J., joins, concurring in result:

¶1 I concur with the majority's decision to issue a writ of prohibition on the ground that the Attorney General's intervention would impermissibly enlarge the scope of the underlying litigation. I write separately to address the Court's misapplication of Gettler v. Cities Service Co., 1987 OK 57739 P.2d 515

¶2 The district court entered a journal entry granting intervention both as of right and permissively under 12 O.S. 2021, § 2024(A) and (B). State Farm brought this original action against Oklahoma County District Judge Amy Palumbo challenging that order. In an original action, this Court must independently determine whether the lower court exercised judicial power unauthorized by law. Cannon v. Lane, 1993 OK 40867 P.2d 1235and permissively.

¶3 The majority relies on Gettler for the proposition that the "expansion of litigation" doctrine is dispositive of all issues before us. Gettler predates the current Oklahoma Pleading Code, which introduced the distinct frameworks for intervention as of right and permissive intervention. 1987 OK 57739 P.2d 515Gettler was decided, the Gettler Court never addressed how an expansion of litigation doctrine affects the modern statutory inquiry. The plain language of the intervention statute distinguishes between intervention of right, which a court must allow, and permissive intervention, which a court may allow. 12 O.S.2021, § 2024

I. Intervention by Statutory Right.

¶4 The Attorney General lacks a statutory right to join the private litigation between the Hurshes and State Farm. Both 74 O.S. Supp. 2025, §§ 18b(A)(3) and 18b(A)(22) authorize the Attorney General to appear on behalf of the State only when a state or collective interest is implicated in the litigation. Here, no such interest exists.

¶5 This Court has defined an "interested party" as one whose statutory rights or immunities will be altered, enlarged, or abridged by a decree, or one who holds a legally recognized private interest beyond a mere possible pecuniary benefit. See First Nat'l Bank v. Okla. Sav. & Loan Bd., 1977 OK 171569 P.2d 993Love v. Wilson, 1938 OK 57after the Attorney General asserts his claims against State Farm. To allow intervention simply because the litigants are Oklahomans would grant the Attorney General license to intervene in every civil matter, from family law cases to royalty owner disputes. As this Court long ago established, "the [S]tate cannot lend the power of its name, or assume the cause of one private citizen against another, for the purpose of settling rights or titles in controversy between them." Savoy Oil Co. v. Emery, 1928 OK 572277 P. 1029

II. Permissive Intervention. 

¶6 I concur that the Attorney General should not be allowed to permissibly intervene because his proposed claims would alter the nature of this proceeding. In addition to the applicable law, the factual foundations of the Attorney General's claims also diverge significantly from those of a private bad faith action. While there may be superficial commonality regarding State Farm's general adjustment practices, the individual insurance claims spanning the State involve a multitude of disparate variables. A proper adjudication of these claims would require a case-by-case analysis of numerous factual distinctions, including the specific location of the loss among the 77 counties within Oklahoma, the severity of the hailstorm, the unique language of each individual policy, the varying extent of property damage, the conduct of different inspectors and adjusters, and the specific indemnity payments made. Because the Attorney General's claims necessitate an intensive, individualized factual inquiry, they are fundamentally different from the singular, concrete loss at issue in this case. See, e.g., Clippinger v. State Farm Auto. Ins. Co., No. 2:20-cv-02482, 2026 WL 1113480, *14-17 (6th Cir. April 24, 2026) (decertifying a class against State Farm on the basis that the valuation analysis of each claim would require an independent and individualized assessment of each member's property, allowing the individual claims to dominate over the common claims); Ambrosio v. Progressive Preferred Ins. Co., 154 F.4th 1107, 1110-13 (9th Cir. 2025) (affirming the district court's refusal to certify an Arizona class of insurance customers because individual questions about vehicle valuations predominated over all other issues).

¶7 Further, the Attorney General's intervention subjects State Farm (or any similar situated party) to prejudice by forcing it to defend a routine hail damage claim against the combined resources of the private plaintiffs and the State. This risk of unfair prejudice outweighs any potential benefit of intervention, as it shifts the focus from the reasonableness of a specific claim adjustment to broad, generalized allegations of misconduct.

FOOTNOTES

12 O.S.2021, § 2024

A.  INTERVENTION OF RIGHT. Upon timely application anyone shall be permitted to intervene in an action:

       1.   When a statute confers an unconditional right to intervene; or

       2.  When the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest; provided, there shall be a rebuttable presumption that disposition of a petition requesting the appointment of a guardian for an incapacitated or partially incapacitated person will impair or impede the ability to protect property or other rights of the persons required to receive notice of the appointment pursuant to Section 3-110 of Title 30 of the Oklahoma Statutes.

B. PERMISSIVE INTERVENTION. Upon timely application anyone may be permitted to intervene in an action:

       1. When a statute confers a conditional right to intervene; or

       2. When an applicant's claim or defense and the main action have a question of law or fact in common.

When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.